**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL E. SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiffs***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALETTA MCENTYRE and GAYLA SCHNITZER, on behalf of themselves, all others similarly situated, and the general public,<br><br>         Plaintiffs,<br><br>              v.<br><br>GOOGLE LLC and ALBANY MED HEALTH SYSTEM,<br><br>         Defendants. | Case No: 5:25-cv-10483<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs VALETTA MCENTYRE and GAYLA SCHNITZER, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, bring this action against Defendants GOOGLE LLC ("Google") and ALBANY MED HEALTH SYSTEM ("Albany Med"), and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including the investigation of their counsel.

## INTRODUCTION

1.      Albany Med is a private, nonprofit health system serving a 25-county area in upstate New York. Through its website, AlbanyMed.org, patients can search for doctors and schedule appointments according to their medical conditions, thereby communicating to Albany Med protected health information ("PHI"). Unbeknownst to them, however—and constituting a significant violation of their privacy—Albany Med, without patient consent, allows Google to intercept, read, and utilize for commercial gain patients' personally identifying information ("PII") and PHI, gleaned from their use of AlbanyMed.org.

2.      Plaintiffs, on behalf of themselves and all others similarly situated, bring this action to enjoin Google's interception, and Albany Med's disclosure and communication of patients' PII and PHI without their consent, and to recover compensation for aggrieved Class Members.

## JURISDICTION & VENUE

3.      The Court has original jurisdiction over this action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, specifically 18 U.S.C. § 2510 *et seq.* (the Electronic Communications Privacy Act), and the Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy under Article III of the United States Constitution. Alternatively, the Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and at least one member of the class of plaintiffs is a citizen of a State different from a Defendant.

4.      The Court has personal jurisdiction over Google because its principal place of business is in this district. The Court has personal jurisdiction over Albany Med because, by virtue of contracting with Google for the provision of services at issue and described herein, it has purposefully availed itself of the benefits and privileges of conducting business activities in this State.

5.     Venue is proper in this Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Defendants reside in (*i.e.*, are subject to personal jurisdiction in) this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## DIVISIONAL ASSIGNMENT

6.     This civil action arises out of acts and omissions of Defendants that occurred, in part, in Santa Clara County. Pursuant to Civil Local Rule 3-2(c) and (e), this action is therefore correctly assigned to the San Jose Division.

## PARTIES

7.     Plaintiff Valetta McEntyre is a resident of Troy, New York.

8.     Plaintiff Gayla Schnitzer is a resident of Hudson, New York.

9.     Defendant Google LLC is a Delaware limited liability corporation with its principal place of business at 1600 Amphitheater Parkway, Mountain View, California 94043.

10.     Defendant Albany Med Health System is a not-for-profit New York corporation with its principal place of business at 43 New Scotland Avenue, Albany, New York 12208. It is the largest and only regionally governed health system in northeastern New York and western New England, serving a 25-county area, and comprising multiple affiliates such as Albany Medical Center Hospital, Albany Medical College, Columbia Memorial Hospital, Columbia Regional Medical, Glens Falls Hospital, Glens Falls Medical, Saratoga Hospital, Health Partners of Saratoga, Saratoga Care, Saratoga Regional Medical, Visiting Nurse Association of Albany, and the Visiting Nurse Association of Albany Home Care Corporation. The business employs approximately 16,000 and has an annual revenue of approximately $3 billion.

## FACTS

### I.     PATIENTS USING ALBANYMED.ORG COMMUNICATE PII & PHI

11.     In connection with its health system, Albany Med owns and operates the website, AlbanyMed.org. By using AlbanyMed.org, patients can and frequently do communicate their PII and PHI to Albany Med.

12.     When patients browse AlbanyMed.org to search for medical care services, including when clicking on links or using search queries in the website's built-in search function, they communicate private

and extremely personal information to Albany Med. This includes, but is not limited to medical conditions, care preferences, and appointment schedules, all of which constitute PHI.

13.    For example, AlbanyMed.org's home page includes a menu link to "Find a Doctor." Alternatively, visitors may select a "CHOOSE A DOCTOR" button on the home page. Either link brings them to AlbanyMed.org's "Find a Doctor" page (albanymed.org/find-a-doctor).



14.    AlbanyMed.org's "Find a Doctor" page lists approximately 2,900 board-certified physicians in a wide variety of specialties. Patients looking for a doctor can search, among other ways, by name, specialty, location, or language spoken. The screenshot on the following page illustrates this process. By searching for and selecting professionals through this page, patients communicate information about their medical conditions—their PHI—to Albany Med.

*McEntyre, et al. v. Google LLC, et al.*, Case No: 5:25-cv-10483
CLASS ACTION COMPLAINT





15.    As depicted below, by selecting the "Care & Treatment" menu from AlbanyMed.org's homepage, then selecting "View All Services," patients can also browse and select services by general or specific medical conditions (albanymed.org/care-treatment), further revealing their PHI.

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



5

16.     AlbanyMed.org also features an "Our Locations" page, which allows users to browse or search for nearby medical facilities, transmitting their location, and thus PII, to Albany Med.

///

///

///

///

///



17.    If a patient selects a location, they have the option to "Get Directions," in which case they are referred out to Google Maps, where they may input their current location (*i.e.*, their PII) to obtain directions to the medical facility.



7

## II.     ALBANYMED.ORG PATIENTS HAVE A REASONABLE EXPECTATION OF PRIVACY

18.     When patients communicate their PHI to Albany Med, they reasonably believe it will maintain the confidentiality of that information due to both the extremely sensitive and private nature of the information and due to Albany Med's affirmative representations.

19.     When website users first navigate to AlbanyMed.org, they are presented with a cookie banner that states, "We use cookies to give you the best experience and analyze website performance. By continuing to navigate our website, you agree to our privacy policy and terms of use." Users may click the links to read the policies, click "Close" to close the cookie banner, or continue to navigate the website without interacting with the banner. Users have no option to reject or manage cookies.



20.     As shown above, this cookie banner does not disclose to users that Albany Med may share patients' medical information with third parties, nor that their medical information is being shared for the purposes of profiling and targeted advertising.

21.     The link in the cookie banner to "our privacy policy" brings users to Albany Med's Consumer Web Privacy Statement (https://www.albanymed.org/consumer-web-privacy-statement).

22.     That Statement says, "[t]he Albany Med Health System [the "System"] . . . established this policy to demonstrate its commitment to your privacy," and further represents that "[y]our privacy is

important to the System. The only information the System obtains about individual visitors to this website is information supplied voluntarily by the visitor."

23.    The Statement further provides, "[t]he personal information we collect depends on how you choose to make use of our website. We will not collect any identifying or personal information about you unless you deliberately submit such information in the course of using this website."

24.    The Statement further provides, "[t]o improve the quality of this website, we gather general information about the use of our site through the use of cookies. The anonymous usage data collected through cookies helps us analyze and improve the quality and efficiency of our website as well as ease your use of our site. Cookies you receive from the System's website do not contain any personally identifiable information and cannot identify or track you personally. We do not use cookies for advertising or other commercial purposes."

25.    The Statement further provides that while "no one can give an absolute assurance that information intended to be maintained as private, whether transmitted via the Internet or otherwise, cannot be accessed inappropriately or unlawfully by third parties," Albany Med has "taken and will continue to take commercially reasonable steps in compliance with state and federal laws to ensure the security of your personal information."

26.    Finally, the Statement provides that "[o]ur contractors are legally bound to protect your information and responsible for instituting security measures to protect your information in compliance with industry standards and state and federal laws."

## III.    GOOGLE ANALYTICS COOKIES ON ALBANYMED.ORG ALLOW GOOGLE TO TRACK, COLLECT, AND PROFIT FROM PATIENTS' PII AND PHI

27.    Contrary to these assurances, the process by which Albany Med allows patients' data to be tracked and shared with Google violates patients' reasonable expectation of privacy.

28.    When users visit AlbanyMed.org, Google-developed trackers embedded within the website activate and immediately begin collecting data about the users' activity. These "cookies"[1] collect unique

---

[1] Cookies refers to "HTTP cookies" or "internet cookies," which are built to help web browsers (like Chrome, Edge, Safari, etc.) track, personalize and save information about a user's browsing session. A web server that stores the website's data sends a short stream of identifying information to the user's web

identifiers and other data, including browsing patterns, interests, and users' interactions with specific pages such as "Find a Doctor" and "Care & Treatment." This data is then transmitted to Google in real time, and Google uses it to build detailed user profiles for analytics, targeted advertising, and other marketing purposes. Since Google's trackers are used across multiple websites, data from different sites is aggregated to enhance the user's profile. And when a user browses any website using the same cookies, they continue to gather and share data, including PHI and PII.

29. Google Analytics is a web analytics service that, among other things, allows website owners to track visitors' actions via cookies. Google Analytics is free in that no money is exchanged between Albany Med on one hand and Google on the other for its use on AlbanyMed.org, but Defendants benefit, nonetheless. Albany Med uses the insights gained from the trackers to optimize content, deliver targeted ads, and generate site traffic, all of which increase sales. Google captures user data to optimize ad performance and increase ad spending—the cornerstone of its revenue, which amounts to tens of billions of dollars annually.

30. Some of these cookies, including those used on AlbanyMed.org, include unique identifiers that link the browsing data collected to an individual's various Google accounts (e.g., YouTube and Gmail). This allows Google to recognize returning users and track their behavior across different websites. Using embedded scripts in the website's code, every interaction on AlbanyMed.org is logged and transmitted to Google servers.

31. In particular, Google Analytics uses cookies called "3PSID," "3PAPISID," and "3PSIDCC," among others, to identify users by linking their browsing activity to their Google Chrome or Gmail accounts when they are signed in. These cookies enable Google to create a comprehensive user profile by connecting web activity with authenticated Google accounts.

32. Google Analytics also uses a cookie called "NID," which collects information from users even when they are not signed in, or have never signed in, to a Google account. This cookie enables tracking across all user states regardless of authentication status.

_____
browser, then identifying data is processed and read by "name-value" pairs. These pairs tell the cookies where to be sent and what data to recall.

33.    The data gathered by these cookies is used to create user profiles based on individual interests, enabling Google to deliver targeted advertisements. These cookies constitute PII as they are unique to each user and can be used to identify individuals.

34.    The screenshot below illustrates the PII and PHI of a patient seeking Obstetric & Gynecologic Care on AlbanyMed.org being shared with Google via its Analytics cookies.



35.    As depicted below, Albany Med also shares users' IP addresses, also constituting PII, with Google.

36.     An IP address is a globally unique numerical identifier that guides or routes communications across the Internet. Often written as four sets of numbers separated by periods (e.g., 94.140.9.22), Internet Service Providers assign IP addresses to networking devices such as modems or routers.

37.     IP addresses function as the essential addressing system of the Internet. Just as a telephone number routes calls to the correct household, an IP address is necessary for routing Internet communications to the correct location. Importantly, IP addresses reveal the geographic location of Internet users. Free online "IP lookup" services use databases that map IP addresses to geographic areas, often providing information about the country, city, county, approximate coordinates, or even the Internet Service Provider associated with the address.

38.     The geolocation capability of IP addresses makes them extraordinarily valuable for digital advertising and tracking. IP addresses allow companies to target advertisements to users in specific geographic areas with over 95% accuracy, and to track user interactions across multiple websites, building detailed profiles of users' browsing habits tied to their location.

39.     For these reasons, Europe's General Data Protection Regulation classifies IP addresses as "personal data," recognizing that even data that has been de-identified or pseudonymized but can be used to re-identify a person's personal data.

40.    When Google Analytics combines IP addresses with 3PSID, 3PAPISID, 3PSIDCC, or NID (discussed further below) cookies, and the sensitive health information intercepted from AlbanyMed.org, it creates a comprehensive digital profile that can identify specific individuals and their medical interests.

41.    By sharing IP addresses, Albany Med patients are at risk of having even more personal information revealed, such as linking the individual user to a household. Sharing users' IP addresses thus increases the identifiability of the user.

42.    Google uses the information Albany Med discloses to identify specific consumers, track their online activity, and monetize it in the form of targeted advertising. That is, the private and sensitive information that Albany Med discloses—including medical symptoms, conditions, and provider preferences—enables Google to produce targeted ads likely to be relevant to the individual user, thereby increasing Google's profits in its ad-selling business.

43.    This is especially true if an AlbanyMed.org user is logged into a Google account. Google Analytics includes a user login session cookie within the tracker's requests to Google's site, which makes any information a patient provides Albany Med personally identifiable because the cookie value can be associated by Google with the user's account identity.

44.    A recent study, for example, found that Google links patients' visits to MyChart portals with user identities using these cookies, demonstrating that the data sent to Google is personally identifiable.[2] Google uses all of the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to use and improve targeted advertising. By tracking user behavior across different websites, Google can improve its targeted advertising, leading to higher click-through rates and, ultimately, more ad revenue.

45.    Even if users are not logged into their Google accounts, their PHI is still tracked, collected, and tied to a unique profile through Google's NID cookie. While these cookies may not allow Google to identify a user by name, the unique identifier tied to that user allows Google to track a user's preferences and activities across all of its services (and other websites). Thus, even if a user is not logged into their Google

---

[2] Huo, M., et al., *All Eyes On Me: Inside Third Party Trackers' Exfiltration of PHI from Healthcare Providers' Online Systems*, WPES '22: Proceedings of the 21st Workshop on Privacy in the Electronic Society, at 197-211 (Nov. 7, 2022).

13

account, Google can, and does, still track a user's browsing behavior, including, for example, in the case of someone browsing AlbanyMed.org, their PHI, for pecuniary gain in the form of targeted ads.

46.     Albany Med also benefits from sharing patient PHI with Google. Google Analytics allows Albany Med to improve its marketing by permitting it to track AlbanyMed.org visitors when they visit other websites or open their email, at which time Albany Med can send direct, targeted ads related to patient PHI.

## V.     ALBANY MED DID NOT DISCLOSE ITS TRANSMISSION OF USERS' PHI TO GOOGLE, AND USERS DID NOT CONSENT TO THE DISCLOSURE

47.     Nowhere on AlbanyMed.org, including in the Privacy Policy and Terms of Service, does Albany Med disclose the specific tracking technologies AlbanyMed.org visitors are subjected to.

48.     Similarly, Albany Med never discloses to visitors that it permits an unidentified third-party, Google, to eavesdrop on their PHI-revealing communications.

49.     Plaintiffs and other Class Members did not consent, nor were they able to consent, to the tracking, collection, and use of their PHI for commercial gain in the form of targeted advertising. This violation of patient privacy goes directly against Albany Med's affirmative representations in its Privacy Policy.

## VI.     GOOGLE'S UNDISCLOSED EAVESDROPPING ON ALBANYMED.ORG USERS VIOLATES THE SITE'S PRIVACY POLICY, HIPAA STANDARDS, INDUSTRY STANDARDS, AND USERS' PRIVACY RIGHTS

50.     Under federal law, a healthcare provider may not disclose personally identifiable, non-public medical information about a patient, a potential patient, or household member of a patient for marketing purposes without the patient's express written authorization.

51.     Guidance from the United States Department of Health and Human Services ("HHS") instructs healthcare providers that patient status alone is protected by HIPAA.[3]

52.     The Google Analytics cookies discussed herein track users, collect their data (including PHI), and transmit that information to Google in real time. Thus, Google is eavesdropping on AlbanyMed.org patient-visitors.

---

[3] HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502; 164.508(a)(3), 164.514(b)(2)(i).

53.     In Guidance regarding Methods for De-identification of PHI in Accordance with the Health Insurance Portability and Accountability Act Privacy Rule, HHS instructs:

> Identifying information alone, such as personal names, residential addresses, or phone numbers, would not necessarily be designated as PHI. For instance, if such information was reported as part of a publicly accessible data source, such as a phone book, then this information would not be PHI because it is not related to health data . . . . If such information was listed with health condition, health care provision, or payment data, such as an indication that the individual was treated at a certain clinic, then this information would be PHI.[4]

54.     Albany Med allows Google's undisclosed eavesdropping, purposely sharing its patients' PII and PHI with Google in contravention of its promises to protect user privacy and makes minimal effort to safeguard user privacy through de-identification methods, in contravention of the guidance principles promulgated by HHS.

55.     In its guidance for marketing, the HHS also instructs:

> The HIPAA Privacy Rule gives individuals important controls over whether and how their protected health information is used and disclosed for marketing purposes. With limited exceptions, the Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for marketing. . . . Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes. Moreover, covered entities may not sell lists of patients to third parties without obtaining authorization from each person on the list.[5]

56.     Medical providers' duty of confidentiality is a core tenet of the physician-patient and hospital-patient relationship. However, Albany Med did not disclose its tracking of patients' data to give to Google for commercial gain, nor did it obtain users' consent before doing so. Thus, Albany Med's conduct was and is in violation of the HIPAA Privacy Rule.

57.     The American Medical Association's ("AMA") Code of Medical Ethics contains numerous rules protecting the privacy of patient data and communications online.

58.     The AMA has also promulgated a list of principles that provide the framework for protecting patient privacy online. Many policies pertain to individual rights of patient-users online, including the right to "know exactly what data of theirs an entity is accessing, using, disclosing, and processing—and for what

---

[4] *See* www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/Deidentification/hh _deid_guidance.pdf.

[5] *See* https://www.hhs.gov/sites/default/files/ocr/privacy/hipaa/understanding/coveredentities/marketing.pdf.

15

purpose—at or before the point of collection."[6] Given that AlbanyMed.org users are not informed of this information in any capacity, Albany Med is acting in violation of AMA ethical standards.

59.     Albany Med's disclosure, and Google's interception of AlbanyMed.org patients' PII and PHI exemplifies the utmost invasion of privacy and would be highly offensive to any reasonable person. These invasions of privacy are particularly offensive given that Google intentionally intercepts users' PHI for financial gain through better targeting of advertisements; and given that Albany Med allows these invasions of privacy for its own financial gain, through more and better targeted advertising, to increase sales.

**VII.     PLAINTIFFS' USE OF ALBANYMED.ORG**

60.     Since at least 2019, Plaintiff Valetta McEntyre has used AlbanyMed.org on her phone or tablet to search for doctors for herself and for her daughter, who, due to her condition, has a medical team consisting of about 15 doctors, and to make medical appointments for herself and her daughter. In doing so, Ms. McEntyre used AlbanyMed.org's search function, searching for specific doctors and conditions, and visited webpages for specific doctors and medical conditions. Ms. McEntyre has run more than 10 separate searches for specific doctors that she can remember.

61.     Since at least October 2018, Plaintiff Gayla Schnitzer has used AlbanyMed.org on her phone and, at times, her computer to make medical appointments and search for doctors for herself and her sister. In doing so, Ms. Schnitzer has, among other things, searched for doctors to confirm they met two criteria, they were in-network and specialized for the care she was seeking. Since October 2018, she estimates she made more than 20 separate appointments for herself and her sister.

62.     Plaintiffs' use of AlbanyMed.org constitutes internet messages, reports, and communications between them, on one hand, and Albany Med on the other, which were transmitted and passed over a wire, line, or cable.

63.     Plaintiff Valetta McEntyre has a Google account, primarily used Google's Chrome browser on her phone to access AlbanyMed.org, and was typically logged into her Google account when browsing the website.

---

[6] *See* https://www.ama-assn.org/system/files/2020-05/privacy-principles.pdf.

64.    Plaintiff Gayla Schnitzer has a Google account, uses Google Chrome while on her computer, and uses both Safari and Google Chrome while on her phone. She is virtually always logged into her Google account when she browses the Internet.

65.    As a result, Plaintiffs' messages, reports, and communications on AlbanyMed.org were instantly available to Google. Everything Plaintiffs browsed or searched on the website was, without notice or permission, tracked and disclosed to Google instantly and automatically as it occurred.

66.    Google's interception of Plaintiffs' PHI and PII was apparent because, for example, shortly after using AlbanyMed.org, Plaintiff McEntyre received targeted advertisements concerning the medical conditions about which she was communicating with Albany Med.

67.    Each time Plaintiffs used AlbanyMed.org, Albany Med allowed Google to intercept, learn the contents of, and use for commercial gain Plaintiffs' messages, reports, and communications.

68.    Because Plaintiffs' messages, reports and communications were intercepted simultaneously as they were being communicated, Google's interceptions occurred while the messages, reports and communications were in transit.

69.    Google was never a party to the messages, reports or communications between Plaintiffs and Albany Med. Plaintiffs did not know that their messages, reports, or communications on AlbanyMed.org would be intercepted by Google.

70.    Plaintiffs did not know that their PHI combined with their individual identifiers would be shared, used, sold, or otherwise disclosed to Google.

71.    Plaintiffs did not consent to their messages, reports, or communications on AlbanyMed.org being shared with Google.

72.    When visiting AlbanyMed.org, Plaintiffs did not know what cookies were and were unaware they were being tracked. Plaintiffs did not have the ability to opt out of having their personal information on AlbanyMed.org shared with Google for commercial gain.

73.    Plaintiffs reasonably believed their messages, reports, and communications on AlbanyMed.org, including the PHI contained therein, were private. Plaintiffs were aware of Albany Med's duty of confidentiality and reasonably expected that the private information they provided, including their

PHI and PII, would remain private and would not be shared with third parties for commercial purposes unrelated to patient care.

74.     Albany Med's procurement of unauthorized interception of Website user communications has caused actual harm to Plaintiffs and Class Members in multiple ways.

75.     First, Plaintiffs would not have been willing to pay what they did for the services they purchased from Albany Med had they known its promise not to sell their personal information was false and misleading, or if Albany Med had revealed the truth. Plaintiffs thus paid more for Albany Med's services than they would otherwise have been willing to pay in reliance on Albany Med's promises that it would keep their PHI and PII private.

76.     Second, Plaintiffs' and other Class Members' private and personal data, including their protected health information, IP addresses, and digital identifiers, have a recognized monetary value in today's digital economy. A 2014 Federal Trade Commission report, for example, detailed the value of user data, particularly health information, finding that data brokers sell data in sensitive categories for a premium.[7] In 2022, the FTC brought a lawsuit against a data broker for selling location data regarding people who visit abortion clinics, valued at approximately $160 for a week's worth of data.[8]

77.     For years, data harvesting has been one of the fastest growing industries in the United States. Conservative estimates suggest Internet companies earn hundreds of dollars per American user through the interception and use of personal data.

78.     The value of health data in particular is well-known and has been reported on extensively in the news. A 2017 article by Time Magazine titled "How Your Medical Data Fuels a Hidden Multi-Billion Dollar Industry," for example, described the extensive market for health data and noted that the market for information was both lucrative and a significant risk to privacy.[9]

---

[7] "Data Brokers: A Call for Transparency and Accountability," Fed. Trade Comm'n (May 2014).

[8] *Fed. Trade Comm'n v. Kochava Inc.*, No 2:22-cv-377 (D. Idah, filed Aug. 29, 2022).

[9] Adam Tanner, "Our Bodies, Our Data: How Companies Make Billions Selling Our Medical Records," *Time.com* (Jan. 9, 2017), *at* https://time.com/4588104/medical-data-industry.

79.    Due to the difficulty in obtaining health information, illegal markets also exist for such personal and sensitive information. NPR reported that health data can be "more expensive than stolen credit card numbers."[10]

80.    Albany Med's disclosure, and Google's interception of Plaintiffs' and other Class Members' PII and PHI has deprived them of the economic value of their personal property without proper consideration, and has resulted in Albany Med and Google being unjustly enriched at the expense of Plaintiffs and other Class Members.

81.    Moreover, medical and health-related information is highly private, and its interception can result in significant embarrassment, stigma, and even discrimination. Plaintiffs and other Class Members have suffered an invasion of their privacy through the unauthorized interception of their electronic communications and healthcare-related activities. These communications included searches for medical specialists, searches for treatments, and inquiries about medical conditions. The interception of these communications violated Plaintiffs' and other Class Members' reasonable expectation that their interactions with a healthcare provider would remain private.

82.    Albany Med's conduct has also undermined patient trust generally and created a chilling effect on digital healthcare communications. Plaintiffs and other Class Members can no longer confidently use AlbanyMed.org to seek medical information, locate healthcare providers, research treatments, or manage their healthcare without fear that their activities are being intercepted by third parties. This chilling effect may lead to reluctance to seek needed healthcare information or services online, potentially even impacting health outcomes.

83.    Once intercepted by Google Analytics, Plaintiffs' and other Class Members' data is beyond their control. This creates an ongoing risk that their sensitive health-related information may be further processed, combined with other data sources, or potentially used by additional third parties, causing continued and future harm.

---

[10]  Aarti Shahani, "The Black Market For Stolen Health Care Data," *NPR.org* (Feb. 13, 2015), *at* https://www.npr.org/sections/alltechconsidered/2015/02/13/385901377/the-black-market-for-stolen-health-care-data.

**CLASS ACTION ALLEGATIONS**

84.     While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent a class of all persons in the United States who, at any time from three years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), interacted with AlbanyMed.org while the website was embedded with Google Analytics cookies (the "Class").

85.     The Members in the proposed Class are so numerous that individual joinder of all Members is impracticable, and the disposition of the claims of the Class in a single action will provide substantial benefits to the parties and Court.

86.     Questions of law and fact common to Plaintiffs and other Class Members include but are not limited to:

     a.     Whether AlbanyMed.org, through embedded trackers and cookies, collected PII or PHI;

     b.     Whether Albany Med disclosed to Google the PII or PHI of Class Members, or messages, reports, and communications between itself and Class Members;

     c.     Whether Google intentionally intercepted Class Members' electronic communications on AlbanyMed.org;

     d.     Whether the interception, disclosure, use, sharing, and sale of Class Members' sensitive personal data for targeted advertising is unconscionable to a reasonable person;

     e.     Whether Google invaded Class Members' privacy by intercepting their PHI;

     f.     Whether Albany Med owed Plaintiffs and other Class Members a duty of care;

     g.     Whether Albany Med breached a contract with Plaintiffs and other Class Members;

     h.     Whether Google and Albany Med were unjustly enriched;

87.     These and other common questions of law and fact predominate over questions that affect only individual Class Members.

88.     Plaintiffs' claims are typical of the Class's claims because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct. Specifically, all Class Members,

including Plaintiffs, were subjected to the same violation of privacy and other unlawful and unfair business practices as a result of using AlbanyMed.org embedded with Google Analytics cookies.

89.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action litigation, who will vigorously prosecute this action and otherwise protect and fairly and adequately represent Plaintiffs and the Class.

90.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for each Class Member to redress the wrongs done to them.

91.     Defendants have acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

92.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq*.

### (Against Google)

93.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

94.     The ECPA provides a private right of action to "any person whose . . . electronic communications are intercepted, disclosed, or intentionally used in violation of" the Act. 18 U.S.C. § 2520(a).

95.     The Act prohibits "intentionally intercept[ing] . . . any wire, oral or electronic communication," *see id.* § 2511(1)(a), provided, however, that "[i]t shall not be unlawful . . . for a person . . . to intercept a wire, oral or electronic communication, where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such interception is for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," *id.* § 2511(2)(d).

21

96.     Under the Act, "intercept" means the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device," 18 U.S.C. § 2510(4), where "contents" includes "any information concerning the substance, purport, or meaning of [a] communication." *Id.* § 2510(8).

97.     Under the Act, "electronic communication" means "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce," with some exceptions not applicable here. *Id.* § 2510(12).

98.     Under the Act, conduct is intentional when it, or the results thereof, are the person's conscious objective. *In re HIPAA Subpoena*, 961 F.3d 59 (1st Cir. 2020).

99.     Under the Act, an "electronic, mechanical, or other device" is "any device . . . which can be used to intercept a[n] . . . electronic communication[.]" 18 U.S.C. § 2510(5).

100.    The following constitute "devices" within the meaning of § 2510(5):

a.      Plaintiffs' and other Class Members' browsers;

b.      Plaintiffs' and other Class Members' computing devices;

c.      Albany Med's web-servers;

d.      Albany Med's website, AlbanyMed.org; and

e.      The tracking code designed by Google and deployed by Albany Med to effectuate the sending and acquisition of patient communications.

101.    The transmissions by Plaintiffs and other Class Members of their PII and PHI to AlbanyMed.org were "electronic communication[s]" within the meaning of 18 U.S.C. § 2510(12). Google was never a party to any of the communications sent by Plaintiffs and other Class Members to AlbanyMed.org.

102.    As described herein, through the use of Google Analytics cookies installed on AlbanyMed.org, Google intentionally intercepted the contents of Plaintiffs' and other Class Members' electronic communications, in violation of 18 U.S.C. § 2511(1).

103.    Plaintiffs and other Class Members did not consent to Google's interception of their private communications with AlbanyMed.org, nor could they have consented because they were unaware of Google's interceptions, which occurred concurrently as they used AlbanyMed.org.

104.    Google cannot rely on the one-party consent rule exception of § 2511(2)(d). HIPAA makes it a crime to, as relevant here, "knowingly and in violation of [the Administrative Simplification provisions of HIPAA] disclose[] individually identifiable health information," or "IIHI," to another person. 42 U.S.C. § 1320d-6(a)(3); *see also id.* § 1320d-6(b) (setting out penalties, including fines and imprisonment). IIHI is defined as:

> any information, including demographic information collected from an individual, that (A) is created or received by a health care provider . . . and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

*Id.* § 1320d(6).

105.    Albany Med operates as a covered healthcare provider under HIPAA, and the information patients input on the "Find a Doctor" page—such as symptoms, conditions, provider preferences, and appointment scheduling information—is collected directly by Albany Med in the context of its members seeking care. The information relates to the provision of health care and the individual's health status. Finally, Google cookies (3PSID, 3PAPISID, 3PSIDCC, and NID), and their associated Analytics scripts, embed a persistent, unique identifier in each visitor's browser and transmits it to Google along with the user's IP address and page-level data. When these unique identifiers travel in the same payload as the symptoms, conditions, and specialty preferences a patient enters on the "Find a Doctor" page, the combined dataset becomes IIHI, and therefore PHI, because the identifiers can be used by Google to single out the individual whose health data is implicated.

106.    Accordingly, Albany Med's transmission of that data to Google constitutes a "disclosure" of PHI under HIPAA. *See* 45 C.F.R. § 160.103, 164.502(a), 164.514(b)(2).

107.    Plaintiffs and other Class Members suffered harm as a result of Google's violations of the Act, and seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Google as a result of its unlawful conduct, or statutory

23

damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, *et seq*.

### (Against Albany Med)

108.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

109.    The ECPA provides a private right of action to "any person whose . . . electronic communication is intercepted, disclosed, or intentionally used in violation of" the Act. 18 U.S.C. § 2520(a).

110.    The Act prohibits "procur[ing] any other person to intercept, or endeavor to intercept, any wire, oral or electronic communication," *id.* § 2511(1)(a).

111.    Albany Med made the affirmative decision to implement Google Analytics on its website. This implementation was a deliberate action requiring Albany Med's web administrators to copy the Google Analytics tracking code and insert it into the website's source code. Without Albany Med's deliberate implementation of this code, Google Analytics would have no access to the electronic communications of Albany Med's website visitors, including Plaintiffs and other Class Members.

112.    Albany Med controls which pages of its website contain the Google Analytics tracking code and could exclude tracking from sensitive pages where healthcare information is accessed or inputted, but has chosen instead to implement tracking across these sensitive areas of its website, AlbanyMed.org. Albany Med maintains complete control over the website and could remove or modify the Google Analytics tracker at any time. Albany Med's continued use of the Google Analytics tracker represents an ongoing choice to procure Google Analytics to intercept electronic communications from visitors to the website, including Plaintiffs and other Class Members, as described above in paragraphs 95-102.

113.    Albany Med has procured Google Analytics' services to intercept electronic communications from its website visitors, including Plaintiffs and other Class Members, and has arranged, aided, and abetted the interception of these communications by Google, after which the data is stored, analyzed, and potentially combined with other data in Google's possession.

114.    Albany Med receives direct benefits from implementing the Google Analytics tracker and procuring Google to intercept Plaintiffs' and other Class Members' communications, including the ability to deliver targeted advertising and potentially increased advertising revenue. These benefits further establish Albany Med's responsibility for procuring the interception practices that generate these capabilities.

115.    Albany Med's behavior constitutes a procurement of another person to intercept electronic communications without the consent of all parties to the communication, in violation of 18 U.S.C. § 2511(1)(a).

116.    Plaintiffs and other Class Members suffered harm as a result of Albany Med's violations of the Act, and seek (a) preliminary, equitable, and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by Albany Med as a result of its unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

### THIRD CAUSE OF ACTION

### Intrusion Upon Seclusion

### (Against Google)

117.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

118.    "Invasion of privacy has been recognized as a common law tort for over a century." *Matera v. Google Inc.*, 2016 WL 5339806, at *10 (N.D. Cal. Sept. 23, 2016) (citing Restatement (Second) of Torts §§ 652A-I for the proposition "that the right to privacy was first accepted by an American court in 1905, and 'a right to privacy is now recognized in the great majority of the American jurisdictions that have considered the question'"). "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." Samuel D. Warren & Louis Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 198 (1890).

119.    The Restatement (Second) of Torts explains that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652B (1977).

120.    The Supreme Court has recognized the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right to privacy older than the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965).

121.    The overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares their personal data. A recent study showed 92% of Americans feel companies should be required to prepare reports on what is done with user data, and 77% would likely support legislation that would prevent companies from selling personal data, with 75% of those who said they like personalized advertising also saying they would support such legislation. *See* Aliza Vigderman, *Americans Get an F on Digital Privacy Knowledge*, Security.org, Apr. 1, 2025, https://security.org/digital-security/american-digital-privacy-knowledge.

122.    Plaintiffs and other Class Members have reasonable expectations of privacy in using AlbanyMed.org and in their PHI, generally. The reasonable expectation of privacy in their PHI is intrinsic and further stems from and is reinforced by representations in AlbanyMed.org's Privacy Policy.

123.    Google violates AlbanyMed.org users' right to privacy every time it eavesdrops and intercepts users' PHI, IIHI, and other private communications with AlbanyMed.org, without their knowledge or consent.

124.    Google's intrusions, by viewing and utilizing Class Members' PHI for economic gain, are highly offensive to a reasonable person. This is evidenced by, *inter alia*, Albany Med making clear efforts to assure AlbanyMed.org users their PII and PHI will not be shared. It is also self-evident from the highly personal and protected nature of the health information Google intrudes upon without consent.

125.    Plaintiffs and other Class Members were harmed by the intrusion of Google into their private affairs as detailed herein. Google's actions and conduct complained of were a substantial factor in causing the harm suffered by Plaintiffs and other Class Members.

126.    As a result, Plaintiffs seek injunctive relief prohibiting any further intrusions into Class Members' privacy by Google, the destruction of any information obtained as a result of its past intrusions, and damages in a sum to be determined at trial.

**FOURTH CAUSE OF ACTION**

**Violation of N.Y. Gen. Bus. L. § 349**

**(Against Albany Med)**

127.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if fully set forth herein.

128.    Albany Med's conduct constitutes deceptive acts or practices in the conduct of business, trade, or commerce or in the furnishing of services in New York which affects the public interest under N.Y. Gen. Bus. L. § 349.

129.    Albany Med provides paid healthcare services to New York consumers. During the Class Period, Albany Med carried out a plan, scheme and course of conduct that was consumer oriented.

130.    As alleged herein, Albany Med engaged in, and continues to engage in, deceptive acts and practices and deceptive omissions. In particular, Albany Med misrepresented that users' "privacy is important to [Albany Med]"; that it "will not collect any identifying or personal information about you unless you deliberately submit such information in the course of using th[e] website"; that "[c]ookies [users] receive from the System's website do not contain any personally identifiable information and cannot identify or track [a user] personally"; that it "do[es] not use cookies for advertising or other commercial purposes"; that it has "taken and will continue to take commercially reasonable steps in compliance with state and federal laws to ensure the security of your personal information"; and that its "contractors are legally bound to protect your information and responsible for instituting security measures to protect your information in compliance with industry standards and state and federal laws."

131.    Albany Med deceptively omits that it uses Google Analytics for targeted advertising, and that Google Analytics transmits users' PII, PHI, and IIHI without their consent.

132.    As a direct and proximate result of Albany Med's violation of N.Y. Gen. Bus. L. § 349, Plaintiffs and other Class Members were injured and suffered damages.

133.    The injuries to Plaintiffs and other Class Members were foreseeable to Albany Med and, thus Albany Med's actions were unconscionable and unreasonable.

134.    Albany Med is liable for damages sustained by Plaintiffs and the Class to the maximum extent allowable under N.Y. Gen. Bus. L. § 349, actual damages or $50, whichever is greater.

**FIFTH CAUSE OF ACTION**

**Negligence**

**(Against Albany Med)**

135.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

136.    Albany Med owed Plaintiffs and other Class Members a duty of care, to protect their PHI, PII, and IIHI.

137.    In violation of that duty, Albany Med negligently, carelessly, recklessly, or unlawfully transmitted to Google Plaintiffs' and other Class Members' PII, PHI, and IIHI.

138.    As a direct and proximate result of Albany Med's negligence, Plaintiffs and other Class Members have sustained damages in a sum to be determined at trial.

**SIXTH CAUSE OF ACTION**

**Breach of Contract**

**(Against Albany Med)**

139.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

140.    Albany Med promised Plaintiffs and other Class Members their data would not be personally identifiable, nor used for commercial purposes, and that their privacy would be protected.

141.    Albany Med's promise to users on AlbanyMed.org created a legally binding contract between Albany Med on one hand, and Plaintiffs and other Class Members on the other.

142.    Plaintiffs and other Class Members accepted Albany Med's promise by using AlbanyMed.org and by providing their PII and PHI to Albany Med to purchase services from the Defendant.

143.    In violation of that contract, Albany Med transmitted to Google Plaintiffs' and other Class Members' PII and PHI.

144.    As a direct and proximate result of Albany Med's breach, Plaintiff and other Class Members have sustained damages in a sum to be determined at trial.

1

**SEVENTH CAUSE OF ACTION**

2

**Unjust Enrichment**

3

**(Against Albany Med and Google)**

4    145.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth

5    fully herein.

6    146.    Plaintiffs and other Class Members conferred economic benefits on Defendants in the form

7    of profits resulting from the use of the Class's PII and PHI to improve Defendants' marketing efforts,

8    including targeted advertising.

9    147.    Defendants' financial benefits resulting from their unlawful and inequitable conduct are

10   economically traceable to Plaintiffs' and other Class Members' PII and PHI being obtained and used without

11   their consent. Plaintiffs' and other Class Members have been injured because they have not been

12   compensated for the benefits they conferred on Defendants. Plaintiffs' and other Class Members' legal

13   remedies are inadequate to address this injury.

14   148.    It would be inequitable, unconscionable, and unjust for Defendants to be permitted to retain

15   these economic benefits because the benefits were procured as a direct and proximate result of their wrongful

16   conduct.

17   149.    As a result, Plaintiffs and other Class Members are entitled to equitable relief including

18   restitution and disgorgement of all revenues, earnings, profits, compensation, and benefits which may have

19   been obtained by Defendants as a result of their inequitable business practices.

20   **PRAYER FOR RELIEF**

21   150.    Wherefore, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as

22   follows:

23       a.    An Order declaring this action to be a proper class action, appointing Plaintiffs as

24   Class Representatives, and appointing Plaintiffs' undersigned counsel as Class Counsel;

25       b.    An Order requiring Defendants to bear the cost of Class Notice;

26       c.    An Order requiring Defendants to disgorge all monies, revenues, and profits obtained

27   by means of any wrongful act or practice;

28

*McEntyre, et al. v. Google LLC, et al.*, Case No: 5:25-cv-10483
CLASS ACTION COMPLAINT

d.      An Order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful or unfair business act or practice;

e.      An Order requiring Defendants to pay statutory, compensatory, and punitive damages as permitted by law;

f.      An Order enjoining Google from intercepting, learning the contents of, and profiting from private communications between Albany Med and users of AlbanyMed.org without their consent;

g.      An Order enjoining Albany Med from procuring and allowing Google to intercept, learn the contents of, and profit from private communications between users and AlbanyMed.org without the users' consent;

h.      An Order compelling Google's destruction of all data obtained from communications made by Class Members on AlbanyMed.org without their consent;

i.      A judgment awarding any and all further equitable, injunctive, and declaratory relief as may be appropriate;

j.      Pre- and post-judgment interest, as permitted by law;

k.      An award of attorney fees and costs; and

l.      Such further relief as the Court deems necessary, just, or proper.

## **JURY DEMAND**

151.    Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 5, 2025                    /s/ Jack Fitzgerald

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmpc.com*
MELANIE R. MONROE
*mmonroe@fmpc.com*
TREVOR FLYNN
*tflynn@fmpc.com*
ALLISON FERRARO
*aferraro@fmpc.com*
DANIEL E. SACHS
*dsachs@fmpc.com*
2341 Jefferson Street, Suite 200

30

San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiffs***

31