COOLEY LLP
BENEDICT HUR (SBN 224018)
(bhur@cooley.com)
JOSHUA ANDERSON (SBN 312836)
(joshua.anderson@cooley.com)
ARGEMIRA FLÓREZ (SBN 331153)
(aflorez@cooley.com)
GREGORY J. MERCHANT (SBN 341287)
(gmerchant@cooley.com)
ELIAS GARCIA (SBN 352669)
(elias.garcia@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:     +1 415 693 2000
Facsimile:      +1 415 693 2222

Attorneys for Defendant
GOOGLE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALETTA MCENTYRE and GAYLA SCHNITZER, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC and ALBANY MED HEALTH SYSTEM,<br><br>Defendants. | Case No. 3:25-cv-10483-VC<br><br>**GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Date:      April 16, 2026<br>Time:     2:00 p.m.<br>Judge:    Hon. Vince Chhabria<br>Room:    Courtroom 4 –17th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 16, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, before The Honorable Vince Chhabria of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California in Courtroom 4 – 17th Floor, Defendant Google LLC ("Google"), will and hereby does, move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all claims asserted by Plaintiffs Valetta McEntyre and Gayla Schnitzer (collectively, "Plaintiffs") against Google. Specifically, Google moves to dismiss Plaintiffs' claims for failure to adequately state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Joshua Anderson, any other matters of which the Court may take judicial notice, the pleadings and documents on file in this case, and any evidence or oral argument offered at any hearing on this Motion.

STATEMENT OF ISSUES

Whether Plaintiffs' Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: February 23, 2026                              COOLEY LLP

                                                      By: */s/ Benedict Hur*
                                                      Benedict Hur

                                                      Attorneys for Defendant GOOGLE LLC

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 2

    A.    Google Analytics is a Measurement Tool Developers for Websites ................... 2

    B.    Google Forbade Albany Med from Sending PII to Google ................................. 2

    C.    Plaintiffs' Allegations ...................................................................................... 3

III.  LEGAL STANDARD ................................................................................................... 4

IV.   ARGUMENT .............................................................................................................. 4

    A.    Plaintiffs Fail to Plead the Intent Element Required by Their Claims .................. 4

    B.    Plaintiffs' Claims Against Google Are Time-Barred ........................................... 6

        1.    Plaintiffs' claims fall outside the two-year statute of limitations. .............. 6

        2.    The delayed discovery doctrine does not apply. ....................................... 7

    C.    Plaintiffs' Claims Suffer From Additional Pleading Defects ................................ 7

        1.    Plaintiffs fail to plead a claim under the Wiretap Act. .............................. 8

            a.    The one-party consent rule insulates Google from liability............ 8

            b.    Plaintiffs fail to allege that Google intercepted the "content" of any communication............................................................................. 10

            c.    Plaintiffs fail to adequately allege an interception of data while the data is "in transit."....................................................................... 11

        2.    Plaintiffs Fail to Allege Essential Elements of Intrusion Upon Seclusion 12

            a.    Plaintiffs have not pled that they had a reasonable expectation of privacy in the data that was purportedly intercepted. .................. 13

            b.    The manner in which Google allegedly intruded upon Plaintiffs' privacy is not highly offensive to a reasonable person. ............... 14

        3.    Plaintiffs' Unjust Enrichment Claim is Baseless ..................................... 15

V.    CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................4, 11

*Beltran v. Doctors Med. Ctr. of Modesto*,
   Case No. 23-cv-01670, 2025 WL 1635467 (E.D. Cal. June 9, 2025) ................................6, 15

*Briskin v. Shopify, Inc.*,
   Case No. 21-cv-06269, 2026 WL 161441 (N.D. Cal. Jan. 21, 2026)....................................10

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) ........................................................................6

*In re Carrier IQ, Inc.*,
   78 F.Supp.3d 1051 (N.D. Cal. 2015) ..........................................................................12

*City of Oakland v. Oakland Raiders*,
   83 Cal. App. 5th 458 (2022) ...................................................................................15

*Cousin v. Sharp Healthcare*,
   PHI. 681 F. Supp. 3d 1117 (S.D. Cal.) ..............................................................13, 14, 15

*Doe v. Google LLC*,
   Case No. 23-cv-02431, 2025 WL 1616720 (N.D. Cal. June 6, 2025)........................... *passim*

*Erhart v. BofI Holding, Inc.*,
   612 F. Supp. 3d 1062 (S.D. Cal. 2020).........................................................................15

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ...........................................................................................7

*In re Google Inc. Gmail Litig.*,
   Case No. 13-md-02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ..................................9

*In re Google, Inc. Priv. Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................................14

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) .....................................................................................12, 14

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................................14

*Jones v. Peloton Interactive, Inc.*,
    720 F. Supp. 3d 940 (S.D. Cal. 2024) ........................................................................11

*Jones v. Tonal Sys., Inc.*,
    751 F. Supp. 3d 1025 (S.D. Cal. 2024) ......................................................................11

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ................................................................................11, 12

*Licea v. Am. Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023) .....................................................................11

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .....................................................................14

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ......................................................................................4

*Phillips v. Brooklyn Bedding LLC*,
    Case No. 23-cv-03781, 2024 WL 2830663 (N.D. Cal. Mar. 28, 2024) ......................15

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) .......................................................................................9

*Rodriguez v. Google LLC*,
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ..............................................................11

*Rodriguez v. Google LLC*,
    Case No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................8, 9

*Rojas v. HSBC Card Servs. Inc.*,
    93 Cal. App. 5th 860 (2023) .........................................................................................5

*Ruiz v. Gap, Inc.*,
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) *aff'd*, 380 F. App'x. 689 (9th Cir.
    2010) ...........................................................................................................................14

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
    Case No. 24-cv-06525, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......................7

*Sandhu v. Cardinal Health Inc.*,
    Case No. 25-cv-03938, 2025 WL 2995007 (C.D. Cal. Sept. 5, 2025) .......................7

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) .....................................................................14

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010) .....................................................................................15

*Sussman v. Am. Broad. Cos., Inc.*,
  186 F.3d 1200 (9th Cir. 1999) ...................................................................................9

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) ....................................................................................5

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...................................................................11

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) .....................................................................7

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) .................................................................................10

**Statutes**

18 U.S.C.
  § 2510(4).................................................................................................................12
  § 2511(1)...................................................................................................................5
  § 2511(2)(d)..............................................................................................................8
  § 2511(c)...................................................................................................................8
  § 2520(e)...................................................................................................................6

California Uniform Trade Secrets Act ("CUTSA") ............................................2, 8, 15

Health Insurance Portability and Accountability Act ("HIPAA")..........................3, 8, 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................2, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is the latest effort to impose liability on Defendant Google LLC ("Google") for another company's use of Google Analytics, a free and lawfully available tool that developers can use to gain insight into how users interact with their websites.  Similar to the related case *Doe v. Google*, Case No. 3:23-cv-02431 ("*Doe*"), Plaintiffs here allege that Defendant Albany Med Health System ("Albany Med") implemented Google Analytics into its website, which enabled Google to intercept information about Plaintiffs' interactions with the website revealing their private health information.  Plaintiffs assert claims against Google for violation of the federal Wiretap Act, intrusion upon seclusion, and unjust enrichment.  But, unlike *Doe*, where this Court found that plaintiffs got "barely over the line" in surviving a motion to dismiss after six amended pleadings, the allegations here are threadbare, conclusory, and ultimately fail to state a claim.

***First***, Plaintiffs do not plead that Google intentionally collected their health information.  At most, Plaintiffs claim that Google offers a freely available product, while website developers choose whether and how to use it.  These allegations are inadequate to establish intentional wrongdoing on Google's part, and are further undermined by Google's judicially noticeable policies.  At all relevant times, Google required website developers to disclose their use of Google Analytics, obtain adequate consent, and refrain from passing personally identifiable information ("PII") to Google.  In March 2023, Google provided more specific guidance to entities covered by the Health Insurance Portability and Accountability Act ("HIPAA"), a change this Court found precluded intent in related litigation—even after amendments to address this point.

***Second***, Plaintiffs' claims against Google are barred by the two-year statute of limitations for federal wiretapping and intrusion upon seclusion claims.  Plaintiffs McEntyre and Schnitzer allege they have been using Albany Med's website since 2019 and 2018, respectively, but brought suit only on December 5, 2025.  They do not identify any use of the website within the limitations period, and fail to carry their burden of alleging facts to establish delayed discovery.  Rather than explain why Plaintiffs could not discover the alleged violations sooner, the Complaint outright

states that Google's conduct was "apparent" because Plaintiffs allege that they received targeted advertisements based on her browsing behavior "shortly after" browsing the website.

*Finally*, Plaintiffs' claims against Google are plagued by myriad pleading defects. As to federal wiretapping, Google is insulated from liability under the party exception and Plaintiffs fail to sufficiently plead that Google intercepted the "content" of any communication "in transit." Next, Plaintiffs do not sufficiently plead the two elements of a claim for intrusion upon seclusion—i.e., a "reasonable expectation of privacy" or a "highly offensive intrusion." And unjust enrichment is not an independent cause of action and even if it was, Plaintiffs fail to allege equitable jurisdiction and the claim is superseded by the California Uniform Trade Secrets Act.

The Court should dismiss this action in its entirety.

## II.    BACKGROUND

### A.    Google Analytics is a Measurement Tool Developers for Websites

Google Analytics ("GA") is one of many available analytics tools that websites may use to measure how visitors interact with their websites. (Compl. ¶¶ 29, 44, 46.) Website operators like Albany Med that use Google Analytics "made the affirmative decision to implement Google Analytics" into their websites. (*Id.* ¶ 111.) Websites that run GA control how the technology is implemented and can customize how data is processed and what that data is used for. (*Id.* ¶ 112.)

### B.    Google Forbade Albany Med from Sending PII to Google

To use GA, website operators like Albany Med must consent to and abide by Google's terms and policies that specifically forbid developers from sending PII to Google. Dating back to at least 2017, the GA Terms of Service ("GA Terms") require that any website using Google Analytics must not "pass information to Google that Google could use or recognize as [PII]." (RJN Ex. A-1 (current GA Terms); *see also* Ex. A-2 (GA Terms effective March 31, 2021); Ex. A-3 (GA Terms effective June 17, 2019); Ex. A-4 (GA Terms effective April 17, 2019); Ex. A-5 (GA Terms effective October 1, 2018); Ex. A-6 (GA Terms effective May 17, 2017)). Websites that use Google Analytics "must disclose" the technology's use, as well as how that particular website "collects and processes data." (RJN Exs. A-1–C.)

Since March 2023, Google has also maintained a separate HIPAA policy stating that "HIPAA-regulated entities using [GA] must refrain from exposing to Google any data that may be considered Protected Health Information (PHI), even if not expressly described as PII in Google's contracts and policies." (RJN Ex. B.) The HIPAA policy further states that GA users "may only use [GA] on pages that are not HIPAA-covered." (*Id.*) Google provides various "best practices" for to "avoid sending [] PII," including "remov[ing] PII from user-entered information before it is sent to Analytics." (RJN Ex. C.) After agreeing to the GA Terms and Google's other policies, developers may then freely integrate GA into their website's code, all without any cooperation, involvement, participation, or even human contact with Google. (Compl. ¶ 29.)

### C.    Plaintiffs' Allegations

Plaintiffs filed this action on December 5, 2025, asserting three claims against Google: violation of the Wiretap Act, 18 U.S.C. §§ 2510, *et seq*., intrusion upon seclusion, and unjust enrichment. Plaintiffs' claims are premised on their allegation that Albany Med obtained their health data and shared it with Google without their consent. As to the two named Plaintiffs, McEntyre alleges that she has used AlbanyMed.org "[s]ince at least 2019" to search for doctors and medical conditions, and to make medical appointments for herself and for her daughter. (*Id.* ¶ 60.) Schnitzer alleges that she has used AlbanyMed.org "[s]ince at least October 2018" to search for doctors and to make medical appointments for herself and for her sister. (*Id.* ¶ 61.)

Plaintiffs allege that their "use of AlbanyMed.org constitutes internet messages, reports, and communications between them, on one hand, and Albany Med on the other" and that, via GA, these "messages, reports, and communications on AlbanyMed.org were instantly available to Google." (*Id.* ¶ 65.) Plaintiffs allege that Google used the data it received from Albany Med for the purpose of generating revenue. (*Id.* ¶¶ 24, 29.)

While Plaintiffs make a number of general allegations about the functioning of GA, they do not actually identify the specific data associated with their own claimed browsing sessions that Google allegedly intercepted. Plaintiffs cite screenshots showing that Google allegedly intercepted information relating to a "a patient seeking Obstetric & Gynecologic Care," but do not

claim that that screenshot concerns their interactions with AlbanyMed.org.  (*Id.* ¶ 34.) Additionally, while both Plaintiffs claim that some of their interactions with Albany Med's website concerned healthcare services for individuals other than themselves—e.g., McEntyre's daughter and Schnitzer's sister (*id.* ¶¶ 60–61)—neither Plaintiff attempts to disentangle those browsing sessions relating to other individuals from those performed for themselves.

Plaintiffs further allege that "Google's interception of Plaintiffs' PHI and PII was apparent because, for example, shortly after using AlbanyMed.org, Plaintiff McEntyre received targeted advertisements concerning the medical conditions about which she was communicating with Albany Med."  (*Id.* ¶ 66.)

## III.    LEGAL STANDARD

Rule 12(b)(6) requires dismissal of a cause of action that fails to state a claim upon which relief can be granted.  To state a claim, a plaintiff must plead factual allegations that "plausibly (not merely conceivably) entitle plaintiff to relief."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011).  A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

Plaintiffs' claims against Google cannot survive a motion to dismiss for a host of reasons— namely: (1) Plaintiffs fail to plead the intent element of their claims, (2) the claims are time-barred by their two-year statutes of limitations, and (3) each claim suffers from further pleading defects.

### A.    Plaintiffs Fail to Plead the Intent Element Required by Their Claims

Plaintiffs' failure to adequately plead intent dooms their wiretapping and intrusion upon seclusion claims.  They plead only two barebones allegations relating to Google's intent.  Plaintiffs first allege that "Google intentionally intercepts users' PHI for financial gain through better targeting of advertisements."  (Compl. ¶ 59.)  This conclusory assertion, supported by zero factual allegations, is not enough to show the required intentionality.  Plaintiffs' only other allegation regarding intent is that "Google intentionally intercepted the contents of Plaintiffs' and other Class

Members' electronic communications, in violation of 18 U.S.C. § 2511(1)." (*Id.* ¶ 102.)  That allegation too is conclusory and fails to allege that Google specifically intended to intercept PII.

The naked assertions of Google's intent stand in tension with Plaintiffs' allegations about Albany Med, which illustrate that developers—not Google—choose whether and how to deploy GA on a website.  (Compl. ¶¶ 111–12 (Albany Med made an "affirmative decision" to implement GA and "maintains complete control over the website").)  No allegation even hints that Google even knew Albany Med implemented GA on its website.  Plaintiffs' allegations show only that Google makes tools available to customers, and while Google may be able to derive some benefit from the use of those tools, it is the customers who have control over whether and how to use them.

This falls short of showing the necessary "intent."  The word "intentionally" in this context means "purposefully and deliberately and not as a result of accident or mistake[.]"  *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015).  Thus, "the operative question" when assessing intent is "whether the defendant acted consciously and deliberately with the goal of intercepting wire communications."  *Id.* at 791; *see also Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 876 (2023) (wiretapping occurs where the defendant recording a conversion "does so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that [] use of the equipment will result in" such recording).

Plaintiffs' allegations fall short on their own, but the judicially noticeable material further undermines them.  Google has long required developers to disclose GA, obtain consent, and refrain from passing PII to Google.  (*Supra* at II.B.)  Further, as this Court found in *Doe*, "in 2023, Google started giving clear instructions to its health-provider clients, explaining how to avoid sending private health care information to Google, and emphasizing that Google didn't want that information."  *Doe*, 2025 WL 1616720, at *1–2.  Accordingly, the allegations pled in *Doe* (which are more detailed than those pled here) "do not support an inference that Google, after this point, intentionally obtained communications containing private health information about identifiable patients."  *Id.* at *1.  The threadbare allegations in this case fail to justify a different outcome and should be dismissed, and they are particularly untenable for the time period after March 2023.

### B.    Plaintiffs' Claims Against Google Are Time-Barred

Plaintiffs brought this action many years too late.  Plaintiffs concede that they began using Albany Med's website as early as 2018, but brought this lawsuit only on December 5, 2025.  Given the two-year limitations period applicable to Plaintiffs' claims, any violations occurring before December 3, 2023, would be time-barred unless Plaintiffs properly invoke tolling.  Plaintiffs, however, fail to carry their burden of alleging facts that would support tolling, such as  by pleading the inability to have made earlier discovery that the discovery rule requires.  At a minimum, Plaintiffs' claims should be limited to the period between December 5, 2023, and the date they filed suit.  However, because Plaintiffs cannot make out a plausible showing of intent as of 2023 for the reasons discussed above, the only possible claims are time-barred.

### 1.    Plaintiffs' claims fall outside the two-year statute of limitations.

Claims for federal wiretapping and intrusion upon seclusion have a two-year statute of limitations. 18 U.S.C. § 2520(e); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. 2021).  Plaintiffs Schnitzer and McEntyre allege that they have used the Albany Med website since at least 2018 and 2019, respectively.  Claims for violations occurring in those years would expire no later than 2021—four years before they brought suit in December 2025.

This does not mean Plaintiffs have timely claims for recent violations.  While it is a fair inference from the Complaint that Plaintiffs visited the Albany Med website in 2018 and 2019, neither Plaintiff alleges they visited it within the limitations period.  Their strategic ambiguity fails to support their claims.  *See Beltran v. Doctors Med. Ctr. of Modesto*, Case No. 23-cv-01670, 2025 WL 1635467, at *13 (E.D. Cal. June 9, 2025) (dismissing California wiretapping claim for lack of allegation that plaintiffs visited the at-issue website within the limitations period).  Nor do Plaintiffs allege they engaged in any recent activity on the website that transmitted health information to Google.  Plaintiffs offer screenshots that purport to show a recent interception, but they do not contend this screenshot has anything to do with either of them. Absent tolling, their claims are time-barred.

## 2.    The delayed discovery doctrine does not apply.

Plaintiffs cannot rely on the delayed discovery doctrine to rescue their time-barred claims, because they fail to carry their burden to allege plausible facts to support the doctrine.  To do so, Plaintiffs must plead: "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, Case No. 24-cv-06525, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025) (quotations omitted); *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (same).

Plaintiffs plead no facts regarding the time and manner of discovery.  *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010) (discovery rule inapplicable where plaintiff had not "alleged the time and manner of her discovery of the facts giving rise to her claims").  Nor do Plaintiffs plead "the inability to have made earlier discovery despite reasonable diligence." *Saedi*, 2025 WL 1141168, at *8.  Instead, they allege facts showing it was "apparent" Google had obtained their data and was using it for targeted advertisements.  (*See* Compl. ¶¶ 60, 66); *see Saedi*, 2025 WL 1141168, at *10 ("even assuming that Plaintiff did not have inquiry notice at the exact moment she visited the Website, she surely had inquiry notice when she began seeing [targeted] ads").  Accordingly, Plaintiffs cannot take advantage of the delayed discovery doctrine. *See Sandhu v. Cardinal Health Inc.*, Case No. 25-cv-03938, 2025 WL 2995007, at *3 (C.D. Cal. Sept. 5, 2025) (rejecting discovery rule where plaintiff failed to meet pleading burden).

For these same reasons, the discovery rule is inapplicable because it "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox*, 35 Cal. 4th at 807–08.  Because Plaintiffs plead facts suggesting Google's collection and use of health information was "apparent" "shortly after" using the Albany Med website (Compl. ¶¶ 60, 66 (emphasis added)), the discovery rule fails to preserve their claims.

## C.    Plaintiffs' Claims Suffer From Additional Pleading Defects

Plaintiffs' claims against Google are plagued by further pleading defects,  each of which is a separate and independent basis to dismiss this action.  With respect to their wiretapping claim, Plaintiffs illustrate that Google obtained one-party consent, and further fail to adequately plead

Google intercepted the "content" of any communication "in transit." Regarding intrusion upon seclusion, Plaintiffs fail to show an expectation of privacy in the only information they allege was shared, and do not establish an egregious breach of social norms. Plaintiffs' unjust enrichment is not an independent cause of action and, even if it were, Plaintiffs fail to allege equitable jurisdiction and the claim is superseded by the California Uniform Trade Secrets Act.

### 1.    Plaintiffs fail to plead a claim under the Wiretap Act.

Plaintiffs' claim under the Wiretap Act fails because Plaintiffs fail to plead that Google: (1) lacks consent of a party to the communication, (2) intercepted content of any alleged communication; or (3) intercepted such contents while it was in transit.

### a.    The one-party consent rule insulates Google from liability.

The Wiretap Act does not apply where one party to the transaction consents to the alleged interception.  *See* 18 U.S.C. 2511(c).  Here, Plaintiffs' wiretapping claim fails because Albany Med consented to the use of GA.

Plaintiffs allege that "Albany Med ***made the affirmative decision to implement*** [GA] on its website"—a "***deliberate action***" by Albany Med's web administrators.  (Compl. ¶ 111 (emphasis added).)  While this Court declined to apply the one-party consent exception in *Doe*, that holding was based on a plausible inference that the developers "did not understand" what data would be collected.  *See Doe*, 2025 WL 1616720, at *3.  Here, Albany Med's understanding is implicit in Plaintiffs' fourth cause of action, alleging that Albany Med carried out a deceptive "scheme" to "misrepresent" its privacy practices in connection with its use of GA.  (Compl. ¶¶ 128–34.)  The one-party consent exception therefore applies here.  *See Rodriguez v. Google LLC*, Case No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (no Wiretap violation where "Google's alleged interceptions occurred with the consent of app developers").

Plaintiffs try to get around one-party consent by claiming that "Albany Med's transmission of [private health information] to Google constitutes a 'disclosure' of PHI under HIPAA," thereby triggering an exception to one-party consent where the alleged interception is done to carry out a crime or tort. 18 U.S.C. § 2511(2)(d); (Compl. ¶¶ 104–06.)  But the crime-tort exception cannot

apply because Plaintiffs do not show that Google acted with a wrongful purpose that was separate from the alleged interception itself.

**First**, while Plaintiffs allege that the purported transmission of health information to Google "constitutes" a violation of HIPAA, they do not allege that Google acted for that purpose. The focus of the crime-tort exception "is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original). Thus, to invoke the exception, Plaintiff must allege Google acted with a "criminal or tortious purpose [that is] separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022).

Instead of plausibly showing Google's purpose was to violate HIPAA or any other law—a suggestion contradicted by the judicially noticeable GA Terms—Plaintiffs at most suggest that Google sought to obtain Plaintiffs' data to improve Google's ad-targeting abilities. (*See* Compl. ¶¶ 24, 29.) Even assuming Plaintiffs had supported this assertion with well-pled facts, their supposition of a motive to make money is insufficient. *E.g.*, *Rodriguez*, 2021 WL 2026726, at *6 n.8 (finding the exception inapplicable where Google's alleged interceptions occurred with the consent of application developers and were financially motivated); *In re Google Inc. Gmail Litig.*, Case No. 13-md-02430, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (rejecting the crime-tort exception where the "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money").

**Second**, the "criminal or tortious purpose must be separate and independent from the" interception for the crime-tort exception to apply. *Planned Parenthood*, 51 F.4th at 1136. Here, there is no daylight between the claimed interception of health violation and the purported HIPAA violation; they are one and the same. Nor have Plaintiffs alleged facts "sufficient to create an inference that [Albany Med] w[as] in cahoots with Google for Google to intercept health information in violation of HIPAA." *Doe*, 2025 WL 1616720, at *6 n.4 (rejecting crime-tort exception). Plaintiffs' claims are therefore barred by one-party consent.

**b.    Plaintiffs fail to allege that Google intercepted the "content" of any communication.**

Plaintiffs' wiretapping claim also fails because they do not adequately plead that Google intercepted the "content" of any alleged communication.  "Contents," for purposes of the Wiretap Act, means "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')," and "does not include 'record' information" such as the "name," "address," and "subscriber number or identify" of a subscriber or customer.  *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014).

Here, Plaintiffs' allegations do not establish that the data transmitted to Google constituted the "content" of a communication.  McEntyre alleges that she visited AlbanyMed.org to "make medical appointments for herself and her daughter" and used the website's search function to "search[] for specific doctors and conditions, and visited webpages for specific doctors and medical conditions."  (Compl. ¶ 60.)  Schnitzer similarly alleges that she visited AlbanyMed.org to "search for doctors" and to make appointments.  (*Id.* ¶ 61.)  But Plaintiffs then leap to alleging that "Plaintiffs' use of AlbanyMed.org constitutes internet messages, reports, and communications between them, on one hand, and Albany Med on the other."  (*Id.* ¶ 62.)  Plaintiffs make no connection between their claimed browsing behavior and the "messages, reports" and "communications" *(id.*) that they claim Google intercepted.  And while a separate section of the Complaint includes a screenshot purportedly showing that Albany Med shared with Google that a user was seeking "Obstetric & Gynecologic Care" on its website, there are no allegations that this screenshot reflects the ***Plaintiffs'*** browsing histories.  (*Id.* ¶ 34.)[1]

Also, while Plaintiffs reference that Google collects IP addresses, IP addresses do not

---

[1] The screenshots appear to have been obtained in 2025.  (*See* Compl. ¶ 35 (showing value of 2025 for field "x-browser-year"). Of course, the internet is not static, nor are Google products or the way customers use them.  Nothing in the Complaint establishes that data transmission observed in 2025 would have been consistent with what may have occurred in 2018 or 2019, the only time it is clear Plaintiffs used the website.  *See Briskin v. Shopify, Inc.*, Case No. 21-cv-06269, 2026 WL 161441, at *4 (N.D. Cal. Jan. 21, 2026) (holding allegations of data sharing practices observed in 2021 failed to plausibly support that the same practices were in place when plaintiff visited the website in 2019).

constitute "content." *E.g.*, *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 947 (S.D. Cal. 2024). Absent allegations of intercepted "content," Plaintiffs' wiretapping claim fails.

### c. Plaintiffs fail to adequately allege an interception of data while the data is "in transit."

Even had Plaintiffs alleged Google obtains the "contents" of their communications, their allegations undermine the notion that Google intercepted the contents of their communication *while in transit*. "[A] narrow definition of 'intercept' applies to electronic communications." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). For something to be "intercepted," "it must be acquired during transmission, not while it is in electronic storage." *Id.* What's more, the statute specifies it is the *content* of the communication that must be intercepted— not the communication itself. *See* 18 U.S.C. § 2510(4). The Complaint falls short of this standard.

Plaintiffs plead only a single, conclusory allegation that Google intercepted data while in transit, claiming that their communications were intercepted "in transit" because they were intercepted "simultaneously as they were being communicated." (Compl. ¶ 68.) "Threadbare recitals of the elements of a cause of action"—such as what Plaintiffs plead here—"supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

Further, numerous courts have found that allegations like these are insufficient to show an alleged interception occurred "in transit." *E.g.*, *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) (dismissing wiretapping claim where "Plaintiff's bare allegations that 'the third party . . . secretly intercept[s] (during transmission and in real time)' is conclusory and does not allege specific facts as to how or when the interception takes place"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) (finding plaintiff failed to sufficiently allege where "[p]laintiffs reference an 'open line of communication,' and 'real-time ad bidding' in support of [their] theory, but neither describes how Google actually intercepts data in real time'"); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (similar); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025 (S.D. Cal. 2024) (similar).

What's more, the requirement of "contemporaneous" interception means more than

obtaining the communications quickly or nearly simultaneously.  As illustrated in the Ninth Circuit's seminal case on this issue, "interception" under the Wiretap Act involves receipt "during transmission, not while it is in electronic storage."  *Konop*, 302 F.3d at 878.  This, the court explained, was consistent with the ordinary meaning of the word "intercept," which means to seize "in progress or course before arrival."  *Id.*  Further, the Wiretap Act facially requires that it be the **contents** of a communication that must be "intercepted"—a concept distinct from the communication itself.  *See* 18 U.S.C. § 2510(4) (defining "intercept" to mean "the acquisition of the **contents** of any wire, electronic or oral **communication**") (emphasis added).

Plaintiffs therefore fall far short with their bare allegation that Google obtained "communications" "simultaneously" with their transmission.  Further, the scant allegations that exist on this issue undermine the notion that Google obtained the contents of their communication while in transit.  Specifically, Plaintiffs contend that "Albany Med has procured Google Analytics' services to intercept electronic **communications** from its website visitors, . . . **after** which the data is stored, analyzed, and potentially combined with other data in Google's possession."  (Compl. ¶ 113 (emphasis added).)  This allegation establishes, at most, that Google obtained *communications* when they were sent, but only obtained the *contents* after they had reached Google's servers for analysis.  This does not establish the "interception" envisioned by the Wiretap Act.  *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1077–78 (N.D. Cal. 2015) ("[O]nce a [communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible.");  *see also Konop*, 302 F.3d at 876–77 (communications obtained from electronic storage are outside ECPA's scope, even where storage is brief and transitory).  Plaintiffs' Wiretap Act claim should be dismissed.

### 2.    Plaintiffs Fail to Allege Essential Elements of Intrusion Upon Seclusion

To state a claim for intrusion upon seclusion, a plaintiff must plead that (1) a defendant intentionally intruded into a matter as to which the plaintiff had a reasonably expectation of privacy, and (2) the intrusion occurred in a manner "highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).  Here, Plaintiffs fail to plead both

elements underlying a claim for intrusion upon seclusion.  Their claim should be dismissed.

>    **a.    Plaintiffs have not pled that they had a reasonable expectation of privacy in the data that was purportedly intercepted.**

Setting aside that Plaintiffs fail to plead, as they must, an ***intentional*** intrusion (*see supra* at IV.A), they also do not sufficiently allege that they had a reasonable expectation of privacy in any information they plausibly plead was intercepted.

In *Cousin v. Sharp Healthcare*, a case also involving the use of a third-party cookie embedded into a medical provider's website, the court held that data collected from a consumer's interfacing with the medical provider's website did not constitute protected PHI.  681 F. Supp. 3d 1117 (S.D. Cal.).  The court reasoned that using the website "to 'research . . . doctors,' look for providers,' and 'search for medical specialists'" only yielded "general health information that is accessible to the public at large" because the information obtained did not pertain to the individual plaintiffs' health.  *Id.* at 1123.  And even if more detailed information had been obtained through an appointment-booking process, Plaintiffs must do more than merely allege that "they entered sensitive personal and health information on Defendant's appointment scheduling page when they scheduled medical appointments online."  *Id.* at 1124.

As in *Cousin*, Plaintiffs provide virtually no allegations identifying what specific personal health information, if any, was shared by the Plaintiffs on AlbanyMed.org.  Plaintiffs merely assert that allegedly intercepted communications "included searches for medical specialists, searches for treatments, and inquiries about medical conditions," as well as "internet messages, reports, and communications."  (Compl. ¶¶ 62, 81.)  Nothing more than this is shown in the screenshot reproduced in paragraph 34—presumably reflecting the test search shown in paragraph 14.  (*Id.* ¶¶ 14, 34.)  But generalized allegations of research into medical providers or treatments, without further factual development, is inadequate to demonstrate the sensitive personal information that would support a claim for intrusion upon seclusion.  *See Cousin*, 681 F. Supp. 3d at 1123 ("Plaintiffs cannot maintain their theory of the case absent this factual support.").  Plaintiffs also fail to allege that they have specific "medical diagnoses" or that their claimed searches on Albany

Med's website were "relating to those diagnoses." *Doe*, 2025 WL 1616720, at *4 (finding that the *Doe* plaintiffs pled intrusion upon seclusion because "a reasonable person, knowing their own medical diagnoses, would have a reasonable expectation of privacy as to their website searches relating to those diagnoses on their healthcare providers' websites").

An intrusion claim requires more factual support than what Plaintiffs offer. *See Cousin*, 681 F. Supp. 3d at 1124. Plaintiffs' conclusory allegations of "medical symptoms, conditions, and provider preferences," are inadequate. (Compl. ¶¶ 42, 60–62, 81, 105.)

> **b.    The manner in which Google allegedly intruded upon Plaintiffs' privacy is not highly offensive to a reasonable person.**

Plaintiffs cannot establish that Google committed any "highly offensive" intrusion without providing factual support to establish what data Google collected about them..

"Actionable invasions of privacy also must be 'highly offensive' to a reasonable person, and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *Hernandez*, 47 Cal. 4th at 295. Courts have repeatedly held that "routine commercial behavior" consisting of the collection and disclosure of personal information—even social security numbers—does not qualify as a "highly offensive" or "serious" privacy invasions. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (URLs, page views, and browsing history); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) *aff'd*, 380 F. App'x. 689 (9th Cir. 2010) (social security numbers); *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (browsing history); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (addresses, geolocation, unique device identifier, gender, age, time zone, and app usage information); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (employment and bank account information).

Plaintiffs' allegations, as currently offered, do not rise to the level of an "egregious breach of social norms." At bottom, Plaintiffs allege that Google obtains activity information about what they do on the website. And while they contend that *some* of this information might be sensitive in the abstract, they do not identify what activity, if any, they took that would result in sensitive

information being transmitted to Google. Without further factual support, Plaintiffs' allegations do not establish greater sensitivity than the "routine browsing activity" that courts deem inadequate to support a claim for intrusion upon seclusion. *Cousin*, 681 F. Supp. 3d at 1126–27; *see Beltran*, 2025 WL 1635467, at *8 (finding no egregious breach of social norms "because Plaintiffs do not plead that their medical information was disclosed") (quotations omitted).

### 3.   Plaintiffs' Unjust Enrichment Claim is Baseless

Plaintiffs' unjust enrichment claim fails because it is not a standalone cause of action. *See City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477 (2022). And even if it could be brought here as an independent claim (it cannot), the allegations discussed above fail to show that Google engaged in any "unjust" conduct. But Plaintiffs' claim fails for the additional reason that there exist adequate remedies at law. *See, Phillips v. Brooklyn Bedding LLC*, Case No. 23-cv-03781, 2024 WL 2830663, at *1 (N.D. Cal. Mar. 28, 2024) (dismissing unjust enrichment absent allegation of inadequate legal remedy). While Plaintiffs intone otherwise (Compl. ¶ 147), they assert five legal claims against Defendants over the same conduct.

Further, Plaintiffs' claim for unjust enrichment is superseded by the California Uniform Trade Secret Act ("CUTSA"), because it is premised exclusively on the value of allegedly misappropriated private information. CUTSA provides an exclusive remedy for conduct falling within its terms. *Silvaco Data Sys. v. Intel Corp.,* 184 Cal. App. 4th 210, 236 (2010). CUTSA supersession applies beyond mere trade secret claims: it extends to ***all*** claims "based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant." *Id.* at 239 n.22. In short, a claim that seeks to "impose liability . . . for 'acquiring, disclosing, or using' confidential information of purported value" is superseded by CUTSA. *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1118 (S.D. Cal. 2020). Here, Plaintiffs' claim seeks the value of their allegedly confidential data. (Compl. ¶¶ 76, 78 (alleging Plaintiffs' "private and personal data . . . have a recognized monetary value in today's digital economy").) Accordingly, it is superseded.

### V.   CONCLUSION

For the reasons set forth above, Plaintiffs' claims against Google should be dismissed.

Dated: February 23, 2026                    COOLEY LLP


                                            By:  _/s/ Benedict Hur_____
                                                 Benedict Hur

                                            Attorneys for Defendant GOOGLE LLC