RAYMOND O. AGHAIAN (SBN 218294)
JASON A. ORR (SBN 301764)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: *raghaian@bakerlaw.com*
*jorr@bakerlaw.com*

*Attorneys for Defendant,*
ALBANY MED HEALTH SYSTEM

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| VALETTA MCENTYRE and GAYLA SCHNITZER, on behalf of themselves, all others similarly situation, and the general public<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC and ALBANY MED HEALTH SYSTEM,<br><br>Defendants. | Case No.: 3:25-cv-10483-VC<br><br>*[Assigned to Hon. Vince Chhabria]*<br><br>**DEFENDANT ALBANY MED HEALTH SYSTEM'S MOTION TO DISMISS**<br><br>*[filed concurrently with the Declaration of Matthew Markham.]*<br><br>**<u>Hearing Information</u>:**<br><br>Date: April 16, 2026<br>Time: 10:00 A.M.<br>Place: San Francisco Courthouse<br>Courtroom 4 – 17th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Action Filed: December 5, 2025 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 16, 2026, at 10:00 a.m., or as soon thereafter as this matter may be heard in before the Honorable Vince Chhabria, United States District Court, Courtroom 4, 17th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Albany Med Health System ("Albany Med") will and hereby moves to dismiss with prejudice the Class Action Complaint ("Complaint") of Plaintiffs Valetta McEntyre and Gayla Schnitzer ("Plaintiffs") [Dkt. No. 1].

Albany Med respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) and asks that the Court dismiss the Complaint on the grounds that this Court does not have personal jurisdiction over Albany Med and Plaintiffs fail to allege sufficient facts to plead any of their claims.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Matthew Markham, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

**STATEMENT OF THE ISSUES**

1. Have Plaintiffs met their burden of establishing that this Court has personal jurisdiction over Albany Med?

2. Have Plaintiffs satisfied the Rule 12(b)(6) standard for each of their five claims brought against Albany Med as required to state a claim upon which relief could be granted?

Dated: February 23, 2026 **BAKER & HOSTETLER LLP**

By: */s/ Jason A. Orr*
RAYMOND O. AGHAIAN
JASON A. ORR

*Attorneys for Defendant,*
ALBANY MED HEALTH SYSTEM

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

III. LEGAL STANDARD ..... 2

A. Federal Rule of Civil Procedure 12(b)(2). ..... 2

B. Federal Rule of Civil Procedure 12(b)(6). ..... 3

IV. LAW AND ARGUMENT ..... 3

A. Plaintiffs' Complaint Lacks Personal Jurisdiction. ..... 3

i. There Is No General Jurisdiction. ..... 3

ii. There is No Specific Jurisdiction. ..... 3

B. Plaintiffs' Federal Wiretap Act Claim Fails (Count II). ..... 9

i. Plaintiffs' Wiretap Act Claim Is Barred By Consent. ..... 9

ii. There Is No Liability for "Procurement" or "Aiding and Abetting." ..... 10

C. Plaintiffs Have Not Alleged an Injury for their G.B.L. § 349 Count (Count IV). ..... 11

D. Plaintiffs' Negligence Claim Fails for Lack of Damages (Count V). ..... 13

E. Plaintiffs Have Not Alleged the Formation of any Contract (Count VI). ..... 14

F. Plaintiffs' Unjust Enrichment Claim Fails (Count VII). ..... 15

V. CONCLUSION ..... 16


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
750 N.E.2d 1097 (N.Y. 2001) .... 13

*AM Trust v. UBS AG*,
78 F.Supp.3d 977 (N.D. Cal. Jan. 29, 2015) .... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 3

*Astiana v. Hain Celestial Group, Inc.*,
783 F.3d 753 (9th Cir. 2015) .... 15

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 3

*Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*,
448 F.3d 573 (2d Cir. 2006) .... 15

*In re Boon Global Ltd.*,
923 F.3d 643 (9th Cir. 2019) .... 2

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .... *passim*

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) .... 4, 5

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .... 11

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .... 13, 15

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .... 10

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .... 14

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022) .... 12

*In re Easysaver Rewards Litig.*,
737 F. Supp. 2d 1159 (S.D. Cal. 2010) .... 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836 (N.D. Cal. 2017), *aff'd in part, rev'd in part, and remanded by* 956 F.3d 589 (9th Cir. 2020) .......... 9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 13

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 14, 15

*Gay v. Garnet Health*, 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .......... 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) .......... 3

*Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314 (2002) .......... 12

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 15

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) .......... 6, 8

*Herzer v. Redstone*, 2018 WL 5094933 (C.D. Cal. July 10, 2018) .......... 11

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 10

*Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031 (N.D. Cal. 2018) .......... 3

*Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245 (10th Cir. 2012) .......... 11

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 10

*Lee v. Plex, Inc.*, 773 F. Supp. 3d 755 (N.D. Cal. 2025) .......... 7

*LegalForce RAPC Worldwide P.C. v. GLOTRADE*, 2019 WL 5423463 (N.D. Cal. Oct. 23, 2019) .......... 7, 8

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011) .......... 3, 4

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073 (C.D. Cal. 2003) .......... 7

*Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Moore v. Centrelake Med. Group, Inc.*,
299 Cal. Rptr. 3d 544 (Cal. App. 2d Dist. 2022) .................... 14

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017).................... 2

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) .................... 15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) .................... 11

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015).................... 4, 5

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022).................... 9

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024).................... 13

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004).................... 2, 4

*Senne v. Kansas City Royals Baseball Corp.*,
105 F. Supp. 3d 981 (N.D. Cal. 2015) .................... 3

*Serenium, Inc. v. Zhou*,
2021 WL 3111758 (N.D. Cal. July 22, 2021).................... 5

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990).................... 3, 4, 5

*Small v. Lorillard Tobacco Co.*,
94 N.Y. 2d 43 (1999) .................... 12

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .................... 11

*In re: Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012).................... 14

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 .................... 13

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999).................... 9, 10

*Toretto v. Mediant Commun., Inc.*,
2020 WL 1288478 (N.D. Cal. Mar. 18, 2020).................... 6, 8

*In re Toys R Us, Inc., Priv. Litig.*,
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001).................... 10

*Weston v. Lefiti*,
2023 WL 8458249 (S.D. Cal. Dec. 5, 2023).................... 11



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 11

**Statutes**

18 U.S.C. § 2510(8) ........ 11

18 U.S.C. § 2511(1)(a) ........ 10

18 U.S.C. § 2511(2)(d) ........ 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

Plaintiffs Valetta McEntyre and Gayla Schnitzer ("Plaintiffs") bring this putative class action against Defendant Albany Med Health System ("Albany Med") on the flawed premise that Albany Med's alleged use of Google Analytics—a widely adopted and standard website technology—on its public Website constitutes an illegal wiretap.

While Plaintiffs' application of a decades-old wiretapping statute to modern internet technology is plainly absurd, the Complaint suffers from an even more fundamental defect. Albany Med is a New York nonprofit health system, incorporated in New York. Indeed, Plaintiffs are both New York residents, along with more than 97% of Albany Med's patient population. Yet, Plaintiffs bring their claims in the Northern District of California and allege as their only basis for personal jurisdiction that Albany Med contracted with Google. *Id.* at ¶ 4. Plaintiff's Complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) because Albany Med did not purposefully avail itself of the privilege of conducting business activities in California.

Regardless, Plaintiffs' claims against Albany Med all fail, because Plaintiffs fail to state a claim on which relief could be granted.[1] Thus, if this Court does not dismiss for lack of personal jurisdiction, it should dismiss the Complaint on these grounds.

## II. FACTUAL BACKGROUND

Albany Med is a nonprofit health system in upstate New York. 97.3% of Albany Med's inpatient and outpatient population resides in New York, as determined by the residential addresses provided by patients to Albany Med. Markham Decl. ¶ 5. 1.29% of Albany Med's inpatient and outpatient population resides in New England (Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont). *Id.* 0.06% of Albany Med's inpatient and outpatient population resides in California. *Id.* Likewise, 98.4% of Albany Med's telehealth population resides in New York, 1.08% of Albany Med's telehealth population resides in New England, and 0.03% of Albany Med's telehealth population resides in California. *Id.* at ¶ 6.

[1] Albany Med further contends Plaintiffs' claims fail for lack of subject matter jurisdiction because Plaintiffs have not alleged a concrete injury sufficient to establish Article III standing. The Complaint does not plausibly demonstrate that any disclosure of personal information occurred analogous to a traditionally recognized harm. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025). But, Albany Med acknowledges that injury depends on "how much information is captured and how it is aggregated or used…" and will therefore preserve its standing argument for summary judgement. *Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at *1 (N.D. Cal. Feb. 19, 2025).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Patients can search for doctors on Albany Med's Website. Compl. ¶ 1. Plaintiffs allege that when users visit the Website, "Google-developed trackers … immediately begin collecting data about the users' activity." *Id.* ¶ 28. Although the Complaint includes screenshots taken at an *unknown* date and time by an *unidentified* visitor, which purportedly "illustrate the PII and PHI of a patient seeking Obstetric & Gynecologic Care on AlbanyMed.org being shared with Google," Plaintiffs do not explain how the contents of the screenshots constitute their personally identifiable information ("PII") or protected health information ("PHI"). Compl. ¶¶ 34, 35.

Plaintiffs allege they visited the Website to "make medical appointments" and "search for doctors" for themselves and their family members. *See* Compl. ¶¶ 60, 61. Plaintiffs provide minimal detail about ***their*** visits to the Website, offering only that they visited the Website on their phones or tablets to search for doctors for themselves or their family members. Compl. ¶¶ 60, 61. Plaintiff McEntyre alleges she has used the Website "[s]ince at least 2019" and has "run more than 10 separate searches for specific doctors that she can remember," searching for doctors "for herself and for her daughter." Compl. ¶ 60. Meanwhile, Plaintiff Schnitzer has visited the Website "[s]ince at least October 2018" and "estimates she made more than 20 separate appointments for herself and her sister." Compl. ¶ 61. But Plaintiffs plead no facts showing any of *their* information, much less the contents of their communications with their doctors or details of their appointments, was transmitted to Google as a result of their alleged Website activity.

As a result of Albany Med's use of Google Analytics on its public-facing webpages, Plaintiffs allege they suffered intangible privacy harms. Compl. ¶¶ 80-83. Plaintiffs assert five causes of action against Albany Med: Count II, violation of the Wiretap Act (Compl. ¶¶ 108-116); Count IV, Violation of N.Y. Gen. Bus. Law § 349 (Compl. ¶¶ 127-138); Count V, negligence (Compl. ¶¶ 135-138); Count VI, breach of contract (Compl. ¶¶ 139-144); and Count VII, unjust enrichment (Compl. ¶¶ 145-149). Counts I and III are brought against Defendant Google only.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(2).

Plaintiffs bear the burden of alleging and proving personal jurisdiction. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). A plaintiff may not rest on the "bare allegations" of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

his/her complaint and instead must make a *prima facie* showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004). The Court may consider declarations outside the pleadings to determine whether it has personal jurisdiction. *In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). "[U]ncontroverted allegations in the complaint must be taken as true," but courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up). Even where a plaintiff alleges joint liability, "jurisdiction over each defendant must be established individually." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

**B. <u>Federal Rule of Civil Procedure 12(b)(6).</u>**

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Facial plausibility" requires allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. <u>LAW AND ARGUMENT</u>

### A. <u>Plaintiffs' Complaint Lacks Personal Jurisdiction.</u>

#### *i. There Is No General Jurisdiction.*

To establish general jurisdiction Plaintiff must allege that Albany Med has operations in California "so continuous and systematic as to render [it] essentially at home in [California]." *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1044 (N.D. Cal. 2018). Plaintiffs' only allegations relating to jurisdiction are that "by virtue of contracting with Google for the provision of services at issue and described herein, it has purposefully availed itself of the benefits and privileges of conducting business activities in this State." Compl., ¶ 4. These allegations are insufficient to establish that Albany Med is "at home" in California. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). There is no general jurisdiction.

#### *ii. There is No Specific Jurisdiction.*

"In a purported class action, specific jurisdiction must be demonstrated by the named

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs." *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015). The Ninth Circuit has established a three-prong test for analyzing specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. Plaintiffs bear the burden of satisfying the first two prongs of the test. *Sher*, 911 F.2d at 1361. "If [Plaintiff] fails to meet this burden, California courts lack specific personal jurisdiction." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025). If Plaintiffs succeed, the burden shifts to Albany Med to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

***Prong One:*** "For claims sounding in contract," the Court "ask[s] whether a defendant has 'purposefully avail[ed] [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). "For claims sounding in tort, like the privacy and data use violations," courts "most often employ a purposeful direction analysis." *Briskin*, 135 F.4th at 751. To analyze whether a tort was purposefully directed to the forum state, courts employ the "Calder effects" test, which "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). "[T]he purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751.

Under either test, Plaintiffs fail to meet their burden of establishing any purposeful availment or purposeful direction towards California. This lawsuit arises out of Plaintiffs' allegation that Albany Med embedded Google Analytics on its Website. Compl., ¶ 1. Plaintiffs, both of whom reside in New York (Compl., ¶ 7, 8), allege they used their phones or tablets to search

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

for doctors on the Website. Compl., ¶¶ 60, 61. They allege they received targeted advertisements following these searches (Compl. ¶ 66), and formed a "legally binding contract" with Albany Med based on Albany Med's promises to protect their privacy. Compl. ¶¶ 140, 141. They allege that as a result of Albany Med's acts, Plaintiffs have "suffered an invasion of their privacy." Compl. ¶ 81. They do not claim that *any* of this activity occurred in or was directed at California: Not Albany Med's alleged installation of Google Analytics, not Plaintiffs' alleged use of Albany Med's website, not the alleged targeted advertising, not the alleged promises, not the formation of the alleged contract, not the impact of the alleged invasion of privacy. Thus, while Plaintiffs may have alleged Albany Med "committed an intentional act" by embedding Google Analytics, they neither allege that this act was aimed at California, nor that it caused harm in California or to its residents.

The only forum-related activity Plaintiffs allege is that Albany Med "contract[ed] with Google for the provision of services at issue" and Google is headquartered in California. Compl. ¶ 4, 9. This is undercut by Plaintiffs' later allegation that "Google Analytics is free in that no money is exchanged between Albany Med on one hand and Google on the other for its use on AlbanyMed.org." Compl. ¶ 29. Indeed, Google Analytics is an off-the-shelf tool, available to website owners free of charge, which has terms of service, but does not require parties to enter into contracts before using the tool. Markham Decl. at ¶ 8. Regardless, "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot*, 780 F.3d at 1212. Rather, there must be "actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Mere "random, fortuitous, or attenuated" contacts are not sufficient. *Id.* (internal quotation marks omitted). A defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362.

Even where, unlike here, the plaintiff was one of the contracting parties, the existence of a contract with a party located in California is insufficient to constitute purposeful availment. *See Serenium, Inc. v. Zhou*, 2021 WL 3111758, at *4 (N.D. Cal. July 22, 2021) (no purposeful availment despite that under a contract between the parties, defendant agreed to pay plaintiff to "develop technology in California."). Moreover, there is no purposeful availment where defendant allegedly

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

contracted with parties in California, but "nothing in the record indicates that [defendant] conducted negotiations in California or that it directly solicited business here." *Toretto v. Mediant Commun., Inc.*, 2020 WL 1288478, at *3-4 (N.D. Cal. Mar. 18, 2020) ("[N]othing else in the record suggests that [defendant] sought business specifically in California."). That Albany Med allegedly used a product developed by an entity headquartered in California is exactly the "random, fortuitous, or attenuated" contact the Ninth Circuit has refused to recognize as "purposeful direction."

Plaintiffs do not allege that this Court has jurisdiction based on the reach of the Website to individuals in California. Even if they did, these contacts fail to constitute "purposeful availment." The Ninth Circuit has held that "operation of an interactive website does not, by itself, establish express aiming. Otherwise, every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023).

The Ninth Circuit also recently held that specific personal jurisdiction existed over the New York and Delaware-based subsidiaries of a Canadian corporation that were alleged to have installed cookies on plaintiff's devices to collect data regarding plaintiff's online shopping activity. *Briskin*, 135 F.4th at 761. There, defendant was "alleged to target California consumers to extract, collect, maintain, distribute, and exploit for its own profit, not only the California consumers' payment information that it diverts to its own servers, but also all of the other personal identifying information that it extracts from the software it permanently installs on their devices without their knowledge or consent." *Id.* at 755-56. As a result, the Ninth Circuit reasoned that defendant "expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws." *Id.* at 756.

*Briskin* is easily distinguishable. Unlike in *Briskin,* in the present case, Plaintiffs are not California residents. Plaintiffs do not allege that Albany Med directed its conduct at them in California, nor do they allege Albany Med targeted any California consumers. Plaintiffs do not allege Albany Med committed any "entry into the state of California [] by electronic means," nor any "surreptitious interception of [a California resident's] personal identifying information." *Briskin,* 135 F.4th at 756-757. That Plaintiffs seek to represent a nationwide class of website

visitors, some of whom may reside in California, is immaterial: "claims of unnamed class members are irrelevant to the question of specific jurisdiction." *AM Trust v. UBS AG*, 78 F.Supp.3d 977, 986–87 (N.D. Cal. Jan. 29, 2015).

But the differences between *Briskin* and the present case are not merely between the plaintiffs. As the Ninth Circuit explained, Shopify is a nationwide e-commerce platform. "Shopify's business model is to perform the payment processing services it contracts to provide for its merchants and, in the course of doing so, to obtain valuable personal data about California consumers for its own commercial gain." *Briskin,* 135 F.4th at 756. The Ninth Circuit rejected Shopify's argument that "it does not expressly aim its conduct at California because it operates nationwide and thus is agnostic as to the location in which it data-mines the consumers' personal identifying information," finding that "differential targeting" of the forum state was not required for a finding of express aiming. *Id.* at 757. But, unlike Shopify, Albany Med is *not* agnostic as to the audience it seeks to reach via its Website. As Plaintiffs explain, Albany Med is a "regionally governed health system in northeastern New York and western New England, serving a 25-county area." Compl. ¶ 10. While Albany Med's website may be viewable nationwide, it is only expressly aimed at upstate New York, southern Vermont, and western Massachusetts, the communities to which it provides medical services. Markham Decl. ¶ 7. Albany Med does not target digital display ads, social media ads, or search term ads to individuals based on their residence in California and indeed, only 0.06% of Albany Med's inpatient and outpatient population and 0.03% of its telehealth population resides in California. *Id.* at ¶¶ 5-7. Plaintiffs have not alleged, and indeed cannot allege, that Albany Med "expressly aims" its conduct at California. *See Lee v. Plex, Inc.,* 773 F. Supp. 3d 755, 770 (N.D. Cal. 2025) (no purposeful availment or direction where "Plaintiff does not plausibly allege that [defendant] has leveraged California's market.").

***Prong Two:*** Plaintiffs also cannot satisfy the second prong of the Ninth's Circuit test—that their claims arise out of Albany Med's forum-related activities—because Albany Med's single alleged forum contact is not the but-for cause of their alleged injuries. *LegalForce RAPC Worldwide P.C. v. GLOTRADE*, 2019 WL 5423463, at *4 (N.D. Cal. Oct. 23, 2019); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003) ("but

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

for" contacts "must have some degree of proximate causation to be considered for purposes of jurisdiction"). To satisfy the but-for test "[t]he relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that the defendant himself creates with the forum State." *LegalForce RAPC Worldwide P.C.*, 2019 WL 5423463, at *5 (citation omitted).

In *Briskin,* the Ninth Circuit concluded that plaintiff's claims "arose out of" defendant's contact with plaintiff's device because defendant knew it was located in California. Likewise, the claims "related to" Shopify's California contacts because plaintiff "allege[d] the kind of injury that would "tend to be caused" by Shopify's contacts with California merchants and consumers." *Briskin*, 135 F.4th at 760. Here, conversely, it is implausible to say that Plaintiffs' claims arose out of their contact with a California-headquartered developer, when the alleged installation of the tool, the alleged access of the Website, and the alleged subsequent damages all occurred in New York, both Plaintiffs' and Albany Med's state of residence. *See Toretto*, 2020 WL 1288478, at *6 (in data breach case, despite defendant's contractual relationships with California entities, claims did not "arise out" of defendant's forum connections because "the claims of the California Plaintiff have no casual or proximate relationship to [defendant's] indirect contract with California companies.").

***Prong Three:*** Even if Plaintiff could satisfy the first two prongs, exercising jurisdiction over Albany Med would be unreasonable under the Ninth Circuit's balancing test:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Herbal Brands*, 72 F.4th at 1085. Plaintiffs ask this Court to exercise jurisdiction over Albany Med because its Website contained code that was developed by a California company. The degree to which Albany Med interjected itself into California's affairs is negligible: it is the same degree as any entity who has used a product developed by a company headquartered in California. The burden of defending in the forum state is substantial: Albany Med has no operations in California.

In *Briskin,* the Ninth Circuit specifically noted that California courts have "an interest in the enforcement of laws it enacted to protect California consumers' privacy and data security rights."

*Briskin*, 135 F.4th at 761. But, in the present case, Plaintiffs only bring claims under federal law, a New York state statute, and the common law. Here, the forum state's interest in litigation involving New York Plaintiffs' claims against a New York entity brought under New York law is minimal. Finally, the Northern District of New York, where Plaintiffs and Albany Med reside and where Plaintiffs presumably accessed the Website, is an alternative forum. Plaintiffs have not met their burden of establishing personal jurisdiction over Albany Med in this action.

**B. <u>Plaintiffs' Federal Wiretap Act Claim Fails (Count II).</u>**

A claim under the Wiretap Act "requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig*., 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted), *aff'd in part, rev'd in part, and remanded by* 956 F.3d 589 (9th Cir. 2020).

***i. Plaintiffs' Wiretap Act Claim Is Barred By Consent.***

The Wiretap Act does not make it unlawful for someone to "intercept ... [an] electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d)). Here, Plaintiffs allege that their communications were "with Albany Med." Compl. ¶¶ 66, 103. As such, Albany Med was a party to the communications and cannot be held liable for intercepting them. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) ("[T]he party exception to Plaintiffs' [Wiretap Act] . . . claim[] exempts Defendants from liability").

Plaintiffs attempt to invoke the "crime-tort exception," (Compl. ¶ 104), which applies where the interception was made for the purpose of committing a criminal or tortious act. "Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos*., 186 F.3d 1200, 1202 (9th Cir. 1999). Plaintiffs thus must plausibly allege Albany Med "had an illegal or tortious purpose" that is separate and distinct from the collection and disclosure of Plaintiffs' communications. *Id*. at 1203; *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording.").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Here, Plaintiffs allege the crime-tort exception is triggered by a HIPAA violation, but "the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (HIPAA violation did not satisfy crime-tort exception). Even where an interception was a tortious invasion of privacy under state law, it is not a separate illegal or tortious purpose triggering the crime-tort exception. *Sussman*, 186 F.3d at 1203. Plaintiffs assert that Albany Med installed Google Analytics to "deliver targeted advertising and potentially increase[] advertising revenue," (Compl. ¶ 114), a concession that Albany Med's use of Google technology was motivated by marketing and advertising purposes. The Northern District of California has recently held that where "purpose of the interception was not 'to perpetuate torts on millions of Internet users, but to make money,'" the crime-tort exception to the party-exception is not satisfied. *Lakes v. Ubisoft, Inc.,* 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (collecting cases).

***ii. There Is No Liability for "Procurement" or "Aiding and Abetting."***

Plaintiffs allege that Albany Med "aided and abetted" or "procured Google Analytics' services to intercept electronic communications from its website visitors." Compl. ¶ 113. Indeed, while Plaintiffs refer to "Google's interception" of Plaintiffs' communications through its source code on Albany's Website (Compl. ¶¶ 2, 59, 66, 68, 80, 103), Plaintiffs merely allege "Albany Med's disclosure" (*Id.* at ¶¶ 2, 59, 80) or procurement of Google's services (*Id.* at ¶¶ 112–15).

Under 18 U.S.C. § 2511(1)(a), (4), and (5), any person who "procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" "shall be subject to suit *by the Federal Government* in a court of competent jurisdiction." 18 U.S.C. § 2511(1)(a) (emphasis added). But the Act creates a private right of action only against those who intercept, disclose, or intentionally used communications in violation of the Act. Section 2520(a), under which Plaintiffs bring their Wiretap Act claim, "does not provide a cause of action against aiders and abetters, and, accordingly… plaintiffs may not proceed [] on such theory." *In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001).

When Congress enacted the Wiretap Act in 1986, it specifically excluded civil liability for procurement of an interception (*i.e.*, aiding and abetting), which previously existed under the 1968

predecessor to the Wiretap Act. *See Kirch v. Embarq Mgmt. Co.,* 702 F.3d 1245, 1246-47 (10th Cir. 2012). Courts routinely hold that defendants cannot be liable under section 2520 for "procuring" an interception, because in 1986 Congress amended the section to remove the phrase "or procures any other person to intercept, disclose, or use such communications" as a basis for civil liability. *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, *7 (N.D. Cal. Apr. 4, 2025); *see also, e.g.*, *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1088 (N.D. Cal. 2015); *Weston v. Lefiti*, 2023 WL 8458249, at *3 (S.D. Cal. Dec. 5, 2023); *Herzer v. Redstone*, 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018) (agreeing "that secondary liability is not recognized under the [Wiretap Act.]" and finding plaintiff had failed to state a claim); *In re Easysaver Rewards Litig*., 737 F. Supp. 2d 1159, 1183–84 (S.D. Cal. 2010) (dismissing Wiretap Act claim with prejudice as to defendant who received information but did not intercept it because the Wiretap Act liability is limited to the person who engaged in the violation).

Because the Wiretap Act does not provide a private cause of action against an entity that is alleged to have procured or aided and abetted another party to intercept a communication, Plaintiffs' Wiretap Act claim should be dismissed as a matter of law.[2]

### C. <u>Plaintiffs Have Not Alleged an Injury for their G.B.L. § 349 Count (Count IV).</u>

Plaintiffs' fourth count is for an alleged violation of G.B.L. § 349, a New York state statute which "declares as unlawful '[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995). The G.B.L. provides "a private right of action for 'any person who has been *injured by reason of any violation of this section*,'" *Id.* (emphasis added). Plaintiffs fail to allege: (1) a material deception by Albany Med, and (2) how

[2] Even assuming, arguendo, that Albany Med could be held liable under the Wiretap Act, Plaintiffs' claim still fails because they have not plausibly alleged that the "contents" of their communications were intercepted or disclosed to Google. *See* 18 U.S.C. § 2510(8) (defining "contents" as "any information concerning the substance, purport, or meaning of that communication."). This is distinct from non-content or "record" information—such as a user's name, IP address, or browser metadata—which merely reflects characteristics of the communication rather than its substance. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("[T]he term 'contents' refers to the intended message conveyed by the communication."). The screenshots included in the Complaint, which are not tied to Plaintiffs' specific visits, purport to show data that could be transmitted via Google Analytics. *See* Compl. at ¶¶ 34-35. The information allegedly depicted in the screenshots—such as URLs and HTTP requests—falls squarely within the category of record information, not the "contents" of a communication. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (holding that "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, [and] page navigation" are record information, not contents).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

they were allegedly injured as a result of this claimed deception.

Albany Med's website privacy policy, incorporated by reference[3] into Plaintiffs' complaint (Compl. ¶¶ 19–26), makes clear Albany Med's position that, contrary to Plaintiffs' allegations, the information they allege was disclosed is not "personally identifiable information." *See* Markham Decl., Ex. A, Consumer Web Privacy Statement. The policy states that through the website Albany Med collects two types of information: (1) "personal information to process your request or transaction," which is "encrypted and sent to us using a secure means of transmittal," and (2) "general information about the use of our site through the use of cookies" which "do not contain any personally identifiable information and cannot identify or track you personally." *Id.* These policies are not deceptive as a matter of law. *Cf. Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 150 (S.D.N.Y. 2022) (dismissing G.B.L. § 349 claim because "it is not plausible that a consumer would be misled into thinking that Defendant undertook its carbon-footprint calculation in any manner other than the one it describes in its literature"). Because the Complaint is devoid of any allegation that Google Analytics collects PII or can identify visitors, Plaintiffs have failed to allege deception.

Plaintiffs also fail to allege any facts to plausibly show how they were injured by any claimed deception. Neither Plaintiff alleges she saw, reviewed, or otherwise was exposed to any deceptive statement by Albany Med regarding website privacy. Plaintiffs also do not allege that they paid anything for Albany Med's public Website. Instead, Plaintiffs' claim is a bare one for alleged deception as to the public at large, without stating any injury as to themselves personally. This is insufficient to state a G.B.L. § 349 claim. *See Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314, 326 (2002) (holding "The origin of any advertising or promotional conduct is irrelevant if the deception itself—that is, the advertisement or promotional package—did not result in a transaction in which the consumer was harmed."); *Small v. Lorillard Tobacco Co.*, 94 N.Y. 2d 43, 55-57 (1999) (causation requirement necessitates a "connection between the misrepresentation and any harm from, or failure of, the product," mandating "proof that 'a material deceptive act or practice caused actual, although not necessarily pecuniary, harm") (quotation omitted).

[3] In determining a Motion to Dismiss, the Court may consider documents that are incorporated by reference "if they are central to plaintiffs' claim and no party questions their authenticity." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 882 (C.D. Cal. 2013) (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006))



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**D. Plaintiffs' Negligence Claim Fails for Lack of Damages (Count V).**

Under either California or New York law, "negligence claims must result in actual damages from the complained-of conduct." *R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 897 (C.D. Cal. 2024) (citation omitted); *see also Gay v. Garnet Health*, 2024 WL 4203263, at *5 (S.D.N.Y. Sept. 16, 2024). Both California and New York have adopted the economic loss rule, which provides that, "[i]n the absence of personal injury, physical damage to property, a special relationship between the parties, or some other common law exception to the rule, recovery of purely economic loss for negligence is foreclosed." *Stasi v. Inmediata Health Grp. Corp.,* 501 F. Supp. 3d 898, 913; *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001) (dismissing negligence claim in light of "economic loss rule, which bars recovery in negligence for economic damage absent personal injury or property damage.").

Plaintiffs allege several vague theories of harm: deprivation of economic value of their PII and PHI, invasion of privacy, undermined patient trust, and ongoing risk to their "sensitive health-related information," (Compl. ¶¶ 80–83). There is no injury from loss of economic value of health information where plaintiffs "fail to explain why any alleged acquisition of personal information would necessarily mean that the plaintiffs could not still sell their data in the market they allege exists." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024). Plaintiffs' claim of undermined patient trust resembles a claim for emotional distress damages which, "although emotional distress damages can be sufficient to sustain a negligence claim," are "too conclusory" if Plaintiffs fail to allege "facts pertaining to the nature and extent of [p]laintiffs' emotional or mental suffering." *R.C.*, 733 F. Supp. 3d at 898. Likewise, "risk of identity theft" "is too speculative" in tracking technology litigation because "this is not a case involving, say, hackers, and it is not a case about the theft of, say, social security or credit card numbers." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019); *see also R.C.*, 733 F. Supp. 3d at 899 ("allegations about the mere risk of future damage are too speculative to satisfy the damages element of a negligence claim under California law").

Bare allegations of "loss of privacy" are not sufficient to sustain a negligence claim. *See R.C.*, 733 F. Supp. 3d at 897–98 (although plaintiff alleged "loss of privacy," negligence claim was

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

dismissed for lack of damages). Plaintiffs' vague allegations that Google Analytics can capture the search parameters on Albany Med's "find a doctor" webpage, without providing any details on the searches Plaintiffs actually ran—which may have been made on behalf of family members, which may not have been made for the purpose of receiving treatment, and which may not have led to the receipt of any medical services—are not sufficient to allege damages from a privacy violation.

Even if Plaintiffs had alleged any cognizable injury, their alleged injuries are purely economic and therefore barred by the economic-loss doctrine. Plaintiffs do not plausibly allege any exception to that doctrine, such as personal injury, a special relationship, or fraud. *See In re: Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 961 (S.D. Cal. 2012). Plaintiffs have alleged being in contractual privity with Albany Med and have "failed to show their claim is independent of their contracts with [defendant]." *Moore v. Centrelake Med. Group, Inc.*, 299 Cal. Rptr. 3d 544, 561 (Cal. App. 2d Dist. 2022) (dismissing negligence claim because plaintiffs did not allege any non-economic losses arising from allegation that defendant failed to safeguard their medical information). Accordingly, the economic loss rule bars Plaintiffs' negligence claims.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### E. <u>Plaintiffs Have Not Alleged the Formation of any Contract (Count VI).</u>

Plaintiffs allege that "Albany Med promised Plaintiffs … their data would not be personally identifiable, nor used for commercial purposes, and that their privacy would be protected" and that this promise "created a legally binding contract" between Plaintiffs and Albany Med. Compl. ¶¶ 140, 141. Because Plaintiffs provide no further detail, Albany Med can only presume that the "promises" Albany Med allegedly made to Plaintiffs were those contained in Albany Med's Consumer Web Privacy Statement, incorporated by reference into Plaintiffs' Complaint. *See Id.* at ¶¶ 21–26. While a privacy policy can, in certain circumstances, "form the basis for a breach of express contract claim," this is only the case where a plaintiff alleges "that she was required to read or agree to either of the documents." *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 821 (N.D. Cal. 2023). Plaintiffs do not allege Plaintiffs ever saw the privacy policy. Finally, Plaintiffs fail to allege that the policies contained "shared commitments to which users must abide." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020). A policy which "merely provides information—not commitments—regarding [defendant's] use of information and

how users can control that information… does not constitute a separate contract." *Id.* at 611.

**F. Plaintiffs' Unjust Enrichment Claim Fails (Count VII).**

Finally, Plaintiffs assert a claim for unjust enrichment. Under California Law, unjust enrichment is not a standalone cause of action. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1055 (S.D. Cal. 2023). Rather, "unjust enrichment" describes "the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request.'" *Doe I v. Google LLC*, 741 F. Supp. 3d at 848-49 (citing *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). Because "plaintiffs have not stated a claim against [defendant] for any unlawful conduct, they have also failed to state an unjust enrichment claim." *Id.* at 849.

Plaintiffs' claim also fails under New York law. In Count VI, Plaintiffs allege breach of contract against Albany Med and state, "Albany Med's promise to users on AlbanyMed.org created a legally binding contract between Albany Med on one hand, and Plaintiffs and other Class Members on the other." Compl. ¶ 141. This count is not pleaded in the alternative to their claim of a contract between the parties and should be dismissed for this reason alone. *See also Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (unjust enrichment precluded "whenever there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact").

Plaintiffs' unjust enrichment claim also fails because Plaintiffs fail to plausibly allege Albany Med was enriched at their expense. Albany Med's website is free to use. Plaintiffs cannot claim any economic loss to themselves by their use of the Website. They instead assert a pecuniary loss based on an alleged deprivation of the "economic value of their personal property without proper consideration," referring to their PII and PHI. Compl. ¶ 80. Plaintiffs, however, do not connect the dots between any alleged value of their private information and any actual loss as to themselves, personally. *See Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *6, 13 (S.D.N.Y. Aug. 17, 2016) ("While we recognize that browsing information may possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this alleged harm remains too conjectural."). Plaintiffs' unjust enrichment claim should therefore be dismissed for failure to state a claim under either California or New York law.

## V. CONCLUSION

For the foregoing reasons, Albany Med respectfully requests that the Court grant its motion and dismiss all of Plaintiffs' claims against Albany Med.

Dated: February 23, 2026

**BAKER & HOSTETLER LLP**

By: */s/ Jason A. Orr*
RAYMOND O. AGHAIAN
JASON A. ORR

*Attorneys for Defendant,*
ALBANY MED HEALTH SYSTEM

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES