RAYMOND O. AGHAIAN (SBN 218294)
JASON A. ORR (SBN 301764)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: *raghaian@bakerlaw.com*
*jorr@bakerlaw.com*

*Attorneys for Defendant,*
ALBANY MED HEALTH SYSTEM

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

VALETTA MCENTYRE and GAYLA SCHNITZER, on behalf of themselves, all others similarly situation, and the general public

Plaintiffs,

v.

ALBANY MED HEALTH SYSTEM,

Defendant.

Case No.: 3:25-cv-10483-VC

*[Assigned to Hon. Vince Chhabria]*

**DEFENDANT ALBANY MED HEALTH SYSTEM'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

*[filed concurrently with the Declaration of Matthew Markham.]*

**<u>Hearing Information</u>:**

Date: May 7, 2026
Time: 10:00 A.M.
Place: San Francisco Courthouse
Courtroom 4 – 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Action Filed: December 5, 2025

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 7, 2026, at 10:00 a.m., or as soon thereafter as this matter may be heard in before the Honorable Vince Chhabria, United States District Court, Courtroom 4, 17th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Albany Med Health System ("Albany Med") will and hereby moves to dismiss with prejudice the First Amended Complaint ("FAC") of Plaintiffs Valetta McEntyre and Gayla Schnitzer ("Plaintiffs") [Dkt. No. 37].

Albany Med respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) and asks that the Court dismiss the FAC on the grounds that this Court does not have personal jurisdiction over Albany Med and Plaintiffs fail to allege sufficient facts to plead any of their claims.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Matthew Markham, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

**STATEMENT OF THE ISSUES**

1. Have Plaintiffs met their burden of establishing that this Court has personal jurisdiction over Albany Med?

2. Have Plaintiffs satisfied the Rule 12(b)(6) standard for each of their five claims brought against Albany Med as required to state a claim upon which relief could be granted?

Dated: March 23, 2026

**BAKER & HOSTETLER LLP**

By: ______________________
RAYMOND O. AGHAIAN

*Attorneys for Defendant,*
ALBANY MED HEALTH SYSTEM

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 1

III. LEGAL STANDARD ..... 2

A. Federal Rule of Civil Procedure 12(b)(2). ..... 2

B. Federal Rule of Civil Procedure 12(b)(6). ..... 3

IV. LAW AND ARGUMENT ..... 3

A. Plaintiff's Complaint Lacks Personal Jurisdiction. ..... 3

i. There Is No General Jurisdiction. ..... 3

ii. There is No Specific Jurisdiction. ..... 3

B. Plaintiffs' Federal Wiretap Act Claim Fails (Count II). ..... 9

i. Plaintiffs' Wiretap Act Claim Is Barred By Consent. ..... 9

ii. There Is No Liability for "Procurement" or "Aiding and Abetting." ..... 10

C. Plaintiffs Have Not Alleged Deception for their G.B.L. § 349 Claim (Count II). ..... 11

D. Negligence and G.B.L. Claims § 349 Fail for Lack of Injury (Counts II & III). ..... 12

E. Plaintiffs Have Not Alleged the Formation of any Contract (Count IV). ..... 14

F. Plaintiffs' Unjust Enrichment Claim Fails (Count V). ..... 15

V. CONCLUSION ..... 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097 (N.Y. 2001) ..... 12

*AM Trust v. UBS AG*, 78 F.Supp.3d 977 (N.D. Cal. Jan. 29, 2015) ..... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 3

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) ..... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 3

*Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573 (2d Cir. 2006) ..... 15

*In re Boon Global Ltd.*, 923 F.3d 643 (9th Cir. 2019) ..... 3

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) ..... *passim*

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255 (2017) ..... 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..... 4, 5

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..... 11

*D'Antonio v. Smith & Wesson Inc.*, No. 25-CV-03085-PCP, 2026 WL 446310 (N.D. Cal. Feb. 17, 2026) ..... 15

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ..... 13, 15

*Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ..... 10

*Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813 (N.D. Cal. 2023) ..... 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022) .......... 12

*In re Easysaver Rewards Litig.*,
737 F. Supp. 2d 1159 (S.D. Cal. 2010) .......... 11

*Estrada v. Johnson & Johnson*,
2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) .......... 13

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017), *aff'd in part, rev'd in part, and remanded by* 956 F.3d 589 (9th Cir. 2020) .......... 9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 14, 15

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .......... 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
131 S. Ct. 2846 (2011) .......... 3

*Goshen v. Mutual Life Ins. Co.*,
98 N.Y.2d 314 (2002) .......... 13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 15

*Harris v. Dutchess Cnty. Bd. of Co-op. Educ. Servs.*,
25 N.Y.S.3d 527 (N.Y. Sup. Ct. 2015) .......... 12

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) .......... 6, 8

*Herzer v. Redstone*,
2018 WL 5094933 (C.D. Cal. July 10, 2018) .......... 11

*Hunt v. Superior Ct.*,
81 Cal. App. 4th 901 (2000) .......... 5

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 10

*Kellman v. Whole Foods Mkt., Inc.*,
313 F. Supp. 3d 1031 (N.D. Cal. 2018) .......... 3

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) .......... 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 10

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) .......... 8

*LegalForce RAPC Worldwide P.C. v. GLOTRADE*,
2019 WL 5423463 (N.D. Cal. Oct. 23, 2019) .......... 8

*Lineberry v. AddShopper, Inc.*,
2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .......... 1

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 14

*Marder v. Lopez*,
450 F.3d 445 (9th Cir.2006) .......... 5

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......... 3, 4

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 11

*Moore v. Centrelake Med. Group, Inc.*,
299 Cal. Rptr. 3d 544 (Cal. App. 2d Dist. 2022) .......... 14

*Morrill v. Scott Fin. Corp.*,
873 F.3d 1136 (9th Cir. 2017) .......... 2

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) .......... 15

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) .......... 13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) .......... 11

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) .......... 4, 5

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 1

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 12, 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 2, 4

*Senne v. Kansas City Royals Baseball Corp.*,
105 F. Supp. 3d 981 (N.D. Cal. 2015) .......... 3

*Serenium, Inc. v. Zhou*,
2021 WL 3111758 (N.D. Cal. July 22, 2021) .......... 6

*Sher v. Johnson*,
911 F.2d 1357 (9th Cir. 1990) .......... 4, 5, 6

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 11

*In re: Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .......... 14

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 .......... 12

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) .......... 9, 10

*Toretto v. Mediant Commun., Inc.*,
2020 WL 1288478 (N.D. Cal. Mar. 18, 2020) .......... 6, 8

*In re Toys R Us, Inc., Priv. Litig.*,
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) .......... 10

*Viggiano v. Hansen Natural Corp.*,
944 F. Supp. 2d 877 (C.D. Cal. 2013) .......... 5

*Weston v. Lefiti*,
2023 WL 8458249 (S.D. Cal. Dec. 5, 2023) .......... 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......... 13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 11

**Statutes**

18 U.S.C. § 2510(8) .......... 11

18 U.S.C. § 2511(1)(a) .......... 10

18 U.S.C. § 2511(2)(d) .......... 9

18 U.S.C. § 2511(4) .......... 10

18 U.S.C. § 2511(5) .......... 10

18 U.S.C. § 2520(a) .......... 10

N.Y. Gen. Bus. Law § 349 .......... 2, 11, 12, 13

**Rules**

Fed. R. Civ. P. 12(b)(2) .......... 1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

Plaintiffs Valetta McEntyre and Gayla Schnitzer ("Plaintiffs") bring this putative class action against Defendant Albany Med Health System ("Albany Med") on the flawed premise that Albany Med's alleged use of Google Analytics—a widely adopted and standard website technology—on its public Website constitutes an illegal wiretap.

While Plaintiffs' application of a decades-old wiretapping statute to modern internet technology is plainly absurd, the First Amended Complaint ("FAC") suffers from a more fundamental defect. Albany Med is a New York nonprofit health system, incorporated in New York. Indeed, Plaintiffs are both New York residents, along with more than 97% of Albany Med's patient population. Yet, Plaintiffs bring their claims in the Northern District of California and allege as their basis for personal jurisdiction that Albany Med contracted with Google and maintains a (miniscule) California patient population. FAC ¶ 8. Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) because Albany Med did not purposefully avail itself of the privilege of conducting business activities in California. Regardless, Plaintiffs' claims against Albany Med all fail, because Plaintiffs fail to state a claim on which relief could be granted.[1] If this Court does not dismiss for lack of personal jurisdiction, it should dismiss the FAC on these grounds.

## II. FACTUAL BACKGROUND

Albany Med is a nonprofit health system in upstate New York. FAC ¶ 1. 97.3% of Albany Med's inpatient and outpatient population resides in New York. Markham Decl. ¶ 5. 1.29% of Albany Med's inpatient and outpatient population resides in New England (Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont). *Id*. 0.06% of Albany Med's inpatient and outpatient population resides in California. *Id.* Likewise, 98.4% of Albany Med's telehealth population resides in New York, 1.08% of Albany Med's telehealth population resides in New England, and 0.03% of Albany Med's telehealth population resides in California. *Id.* at ¶ 6.

[1] Albany Med further contends Plaintiffs' claims fail for lack of subject matter jurisdiction because Plaintiffs have not alleged a concrete injury sufficient to establish Article III standing. The Complaint does not plausibly demonstrate that any disclosure of personal information occurred analogous to a traditionally recognized harm. *See Popa v. Microsoft Corp*., 153 F.4th 784, 789 (9th Cir. 2025). But, Albany Med acknowledges that injury depends on "how much information is captured and how it is aggregated or used" and will therefore preserve its standing argument for summary judgement. *Lineberry v. AddShopper, Inc*., 2025 WL 551864, at *1 (N.D. Cal. Feb. 19, 2025).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Patients can search for doctors on Albany Med's Website. FAC ¶ 1. Plaintiffs allege that when users visit the Website, "Google-developed trackers … immediately begin collecting data about the users' activity." *Id.* ¶ 26. Although the Complaint includes a screenshot taken at an *unknown* date and time by an *unidentified* visitor, which purportedly "illustrates the PII and PHI of a patient seeking Obstetric & Gynecologic Care on AlbanyMed.org being shared with Google," Plaintiffs do not explain how the contents of the screenshot constitute their personally identifiable information ("PII") or protected health information ("PHI"). *Id.* ¶¶ 32, 33.

Plaintiffs allege they visited the Website to "make medical appointments" and "search for doctors" for themselves and their family members. *See* FAC ¶¶ 58, 59. Plaintiffs provide minimal details about ***their*** visits to the Website, offering only that they visited the Website on their phones or tablets to search for doctors. *Id.* Plaintiff McEntyre alleges she has used the Website "[s]ince at least 2019" and has "run more than 10 separate searches for specific doctors that she can remember," searching for doctors "for herself and for her daughter." *Id.* ¶ 58. Meanwhile, Plaintiff Schnitzer has visited the Website "[s]ince at least October 2018" and "estimates she made more than 20 separate appointments for herself and her sister." *Id.* ¶ 59. But Plaintiffs plead no facts showing any of *their* information, much less the contents of their communications with their doctors or appointment details, was transmitted to Google as a result of their alleged Website activity.

As a result, Plaintiffs allege they suffered intangible privacy harms. FAC ¶¶ 77-80. Plaintiffs assert five causes of action against Albany Med: Count I, violation of the Wiretap Act (FAC ¶¶ 90-102); Count II, Violation of N.Y. Gen. Bus. Law § 349 (FAC ¶¶ 103-113); Count III, negligence (FAC ¶¶ 114-123); Count IV, breach of contract (FAC ¶¶ 124-130); and Count V, unjust enrichment (FAC ¶¶ 131-135).

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(2).

Plaintiffs bear the burden of proving personal jurisdiction. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). A plaintiff may not rest on the "bare allegations" of her complaint and instead must make a *prima facie* showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court may consider declarations outside

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the pleadings to determine whether it has personal jurisdiction. *In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). "[U]ncontroverted allegations in the complaint must be taken as true," but courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

### B. Federal Rule of Civil Procedure 12(b)(6).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Facial plausibility" requires allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV. LAW AND ARGUMENT

### A. Plaintiff's Complaint Lacks Personal Jurisdiction.

#### *i. There Is No General Jurisdiction.*

To establish general jurisdiction Plaintiff must allege that Albany Med has operations in California "so continuous and systematic as to render [it] essentially at home in [California]." *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1044 (N.D. Cal. 2018). Plaintiffs allege Albany Med "deliberately availed itself of California's commercial infrastructure by contracting with California-based technology companies" and "operates AlbanyMed.org as a publicly accessible nationwide platform, provides telehealth services to patients residing outside New York, and maintains a California patient population." FAC ¶ 8. However, only 0.06% of Albany Med's inpatient and outpatient population and 0.03% of its telehealth population reside in California. Markham Decl. ¶¶ 5, 6. These allegations are insufficient to establish that Albany Med is "at home" in California. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

#### *ii. There is No Specific Jurisdiction.*

"In a purported class action, specific jurisdiction must be demonstrated by the **named Plaintiffs**." *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015) (emphasis added). The Ninth Circuit uses a three-prong test to analyze specific jurisdiction:





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. Plaintiffs bear the burden of satisfying the first two prongs of the test. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). "If [plaintiff] fails to meet this burden, California courts lack specific personal jurisdiction." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025). If Plaintiffs succeed, the burden shifts to Albany Med to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

***Prong One:*** "For claims sounding in contract," the Court "ask[s] whether a defendant has 'purposefully avail[ed] [itself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). "For claims sounding in tort, like the privacy and data use violations," courts "employ a purposeful direction analysis." *Briskin*, 135 F.4th at 751. To analyze purposefully direction, courts employ the "Calder effects" test, which "focuses on the forum in which the defendant's actions were felt." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). "[T]he purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751.

Under either test, Plaintiffs fail to meet their burden of establishing purposeful availment or purposeful direction towards California. This lawsuit arises out of Plaintiffs' allegation that Albany Med embedded Google Analytics on its Website, after which Plaintiffs, both of whom reside in New York, used their devices to search for doctors on the Website. FAC ¶¶ 4, 6, 7, 58, 59. Plaintiff McEntyre alleges she received targeted advertisements following these searches (FAC ¶ 64), and both allege they formed a "legally binding contract" with Albany Med based on Albany Med's privacy policy. FAC ¶¶ 125, 126. They allege that as a result of Albany Med's acts, Plaintiffs



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"suffered an invasion of their privacy." FAC ¶ 78. They do not claim that *any* of this activity occurred in or was directed at California: Not Albany Med's alleged installation of Google Analytics, not Plaintiffs' alleged use of Albany Med's website, not the alleged targeted advertising, not the alleged promises, not the impact of the alleged invasion of privacy. Thus, while Plaintiffs may have alleged Albany Med "committed an intentional act" by embedding Google Analytics, they fail to allege that this act was aimed at California or caused harm in California's residents.

Instead, Plaintiffs base their claim of personal jurisdiction on their allegation that Albany Med "availed itself of California's commercial infrastructure by contracting with California-based technology companies … to deploy Google Analytics on AlbanyMed.org," despite failing to allege the California citizenship of any such "technology companies." FAC ¶ 8. Plaintiffs point out that Google Analytics' Terms of Service, incorporated by reference in the FAC,[2] provide that "**[t]his Agreement** will be governed by and construed under the laws of the state of California without reference to its conflict of law principles… Each party agrees to submit to the exclusive and personal jurisdiction of the courts located in Santa Clara County, California." Markham Decl., Ex. B, Google Analytics Terms of Service (emphasis added); *see also* FAC ¶ 4. But the present action is not premised on, nor even related to the Terms of Service between Google and Albany Med. Accordingly, the cited law and venue provision does not confer jurisdiction over Albany Med in *this action. See Hunt v. Superior Ct.*, 81 Cal. App. 4th 901, 908 n. 5 (2000) ("unless the document signed by the defendant clearly informs him that his signature subjects him to the jurisdiction of California courts, the courts will not infer that he consented to jurisdiction.").

Regardless, "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot*, 780 F.3d at 1212. There must be "actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475. Mere "random, fortuitous, or attenuated" contacts are insufficient. *Id.* (quotation marks omitted). Instead, Defendant must have performed "affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362.

---

[2] In determining a Motion to Dismiss, the Court may consider documents that are incorporated by reference "if they are central to plaintiffs' claim and no party questions their authenticity." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 882 (C.D. Cal. 2013) (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

On this point, *Bristol-Myers* is instructive. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255 (2017). There, plaintiffs were allegedly injured by Bristol-Myers' drug. Nonresident plaintiffs did not allege they obtained the drug in or were injured in California. *Id.* at 258-260. In "a last ditch contention" for personal jurisdiction, the nonresident plaintiffs asserted that Bristol-Myers' "'decision to contract with a California company to distribute [the drug] nationally' provides a sufficient basis for personal jurisdiction." *Id.* at 268. Here, Plaintiffs' jurisdictional allegations are identical. Despite being nonresidents of the forum, Plaintiffs assert jurisdiction on the basis that Albany Med contracted with non-party, unidentified "California-based technology companies." FAC ¶ 8. As the Supreme Court explained, "[t]he bare fact that [defendant] contracted with a California distributor is not enough to establish personal jurisdiction in the State." *Bristol-Myers Squibb Co.*, 582 U.S. at 268; *see also Serenium, Inc. v. Zhou*, 2021 WL 3111758, at *4 (N.D. Cal. July 22, 2021) (no purposeful availment despite defendant's contractual agreement to pay plaintiff to "develop technology in California."); *Toretto v. Mediant Commun., Inc.*, 2020 WL 1288478, at *3-4 (N.D. Cal. Mar. 18, 2020) (no purposeful availment where defendant contracted with parties in California, but "nothing in the record indicates that [defendant] conducted negotiations in California or that it directly solicited business here."). That Albany Med allegedly contracted with Google is exactly the "random, fortuitous, or attenuated" contact courts refuse to recognize as "purposeful direction." *Sher*, 911 F.2d at 1362.

Plaintiffs' only other bases for personal jurisdiction are that the Website is "a publicly accessible nationwide platform," and that Albany Med "maintains a California patient population." FAC ¶ 8. In the Ninth Circuit, "operation of an interactive website does not, by itself, establish express aiming." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). Otherwise, every interactive website "would be subjecting itself to specific jurisdiction in every forum in which the website was visible." *Id.* The Ninth Circuit also recently held that specific personal jurisdiction existed over nonresident defendants which were alleged to have installed cookies on devices belonging to plaintiff, a California resident, to collect data regarding plaintiff's online shopping activity. *Briskin*, 135 F.4th at 747, 761. There, defendants were "alleged to target California consumers to extract, collect, maintain, distribute, and exploit for its own profit, not only



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the California consumers' payment information that it diverts to its own servers, but also all of the other personal identifying information that it extracts from the software it permanently installs on their devices without their knowledge or consent." *Id.* at 755-56. As a result, the Ninth Circuit reasoned that defendant "expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data." *Id.* at 756.

*Briskin* is easily distinguishable. Unlike plaintiff in *Briskin,* Plaintiffs are not California residents. FAC ¶¶ 6, 7. Plaintiffs do not allege Albany Med directed its conduct at them in California. Plaintiffs do not allege Albany Med injured them by committing any "entry into the state of California [] by electronic means," nor any "surreptitious interception of [a California resident's] personal identifying information." *Briskin,* 135 F.4th at 756-757. That Plaintiffs seek to represent a nationwide class of website visitors, some of whom may reside in California, is immaterial: "claims of unnamed class members are irrelevant to the question of specific jurisdiction." *AM Trust v. UBS AG*, 78 F.Supp.3d 977, 986–87 (N.D. Cal. Jan. 29, 2015).

The differences between *Briskin* and the present case are not merely between the plaintiffs. Shopify is a nationwide e-commerce platform; it "perform[s] the payment processing services it contracts to provide for its merchants and, in the course of doing so, [] obtain[s] valuable personal data about California consumers for its own commercial gain." *Briskin,* 135 F.4th at 756. The Ninth Circuit rejected Shopify's argument that Shopify "operates nationwide and thus is agnostic as to the location in which it data-mines the consumers' personal identifying information," finding that "differential targeting" of the forum state was not required for a finding of express aiming. *Id.* at 757. Unlike Shopify, Albany Med is *not* agnostic as to the audience it seeks to reach via its Website. As Plaintiffs explain, Albany Med is a "regionally governed health system in northeastern New York and western New England, serving a 25-county area." FAC ¶ 8. While Albany Med's website may be viewable nationwide, it is only expressly aimed at upstate New York, southern Vermont, and western Massachusetts, the communities to which it provides medical services. Markham Decl. ¶ 7. Albany Med does not target digital display ads, social media ads, or search term ads to individuals based on their residence in California and indeed, only 0.06% of Albany Med's inpatient and outpatient population and 0.03% of its telehealth population resides in California. *Id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

at ¶¶ 5-7. Plaintiffs cannot allege, that Albany Med "expressly aims" its conduct at California. *See Lee v. Plex, Inc.,* 773 F. Supp. 3d 755, 770 (N.D. Cal. 2025) (no purposeful availment where "Plaintiff does not plausibly allege that [defendant] has leveraged California's market.").

***Prong Two:*** Plaintiffs cannot satisfy the second prong of the Ninth's Circuit test—that their claims arise out of Albany Med's forum-related activities—because Albany Med's forum contact is not the but-for cause of their alleged injuries. *LegalForce RAPC Worldwide P.C. v. GLOTRADE*, 2019 WL 5423463, at *4 (N.D. Cal. Oct. 23, 2019) ("the proper inquiry is whether Defendant's forum-related activities are a but-for cause of Plaintiff's claims and injuries."). To satisfy the but-for test "[t]he relationship between the nonresident defendant, the forum, and the litigation must arise out of contacts that the defendant [] creates with the forum State." *Id.* at *5 (citation omitted).

In *Briskin,* the Ninth Circuit concluded that plaintiff's claims "arose out of" defendant's contact with plaintiff's device because defendant knew it was located in California. *Briskin*, 135 F.4th at 760. The claims "related to" Shopify's California contacts because plaintiff "allege[d] the kind of injury that would 'tend to be caused' by Shopify's contacts with California merchants and consumers." *Id.* Conversely, it is implausible to say that Plaintiffs' claims arose out of their contact with a California-headquartered developer, when the alleged installation of the tool, the alleged access of the Website, and the alleged subsequent damages all occurred in New York, both Plaintiffs' and Albany Med's state of residence. *See Toretto*, 2020 WL 1288478, at *6 (in data breach case, despite defendant's contractual relationships with California entities, claims did not "arise out" of defendant's forum connections because "the claims of the California Plaintiff have no casual or proximate relationship to [defendant's] indirect contract with California companies.").

***Prong Three:*** Even if Plaintiff could satisfy the first two prongs, exercising jurisdiction over Albany Med would be unreasonable under the Ninth Circuit's balancing test, which considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Herbal Brands*, 72 F.4th at 1085. Plaintiffs ask this Court to exercise jurisdiction over Albany Med because it allegedly "contract[ed] with California-based technology companies." FAC ¶ 8. The

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

degree to which Albany Med interjected itself into California's affairs is negligible: it is the same as any entity who has "accept[ed] Google's Terms of Service." *Id.* The burden of defending in the forum state is substantial: Albany Med has no operations in California.

In *Briskin,* the Ninth Circuit specifically noted that California courts have "an interest in the enforcement of laws it enacted to protect California consumers' privacy and data security rights." *Briskin*, 135 F.4th at 761. But, in the present case, Plaintiffs bring claims under federal law, a New York state statute, and the common law. The forum state's interest in litigation involving New York Plaintiffs' claims against a New York entity brought under New York law is minimal. Finally, the Northern District of New York, where Plaintiffs and Albany Med reside and where Plaintiffs presumably accessed the Website, is an alternative forum. Plaintiffs have not met their burden of establishing personal jurisdiction over Albany Med in this action.

### B. Plaintiffs' Federal Wiretap Act Claim Fails (Count II).

A claim under the Wiretap Act "requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig*., 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted), *aff'd in part, rev'd in part, and remanded by* 956 F.3d 589 (9th Cir. 2020).

#### *i. Plaintiffs' Wiretap Act Claim Is Barred By Consent.*

The Wiretap Act does not make it unlawful for someone to "intercept ... [an] electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d)). Here, Plaintiffs allege that they were communicating "to Albany Med." FAC ¶¶ 1, 9, 10, 96. As such, Albany Med was a party to the communications and cannot be held liable for intercepting them. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) ("[T]he party exception to Plaintiffs' [Wiretap Act] . . . claim[] exempts Defendants from liability"). Plaintiffs attempt to invoke the "crime-tort exception," (FAC ¶ 100), which applies where the interception was made for the purpose of committing a criminal or tortious act. "Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos.*, 186

F.3d 1200, 1202 (9th Cir. 1999). Plaintiffs must allege Albany Med "had an illegal or tortious purpose" separate and distinct from the collection and disclosure of Plaintiffs' communications. *Id.* at 1203; *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (Tortious purpose "must be separate and independent from the act of the recording.").

Plaintiffs allege the crime-tort exception is triggered by a HIPAA violation, but "the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (HIPAA violation did not satisfy crime-tort exception); *Sussman*, 186 F.3d at 1203 (despite constituting a tortious invasion of privacy under state law, interception had no separate illegal or tortious purpose triggering the crime-tort exception). Plaintiffs assert Albany Med installed Google Analytics "to improve its marketing," (FAC ¶ 44), and "allows these invasions of privacy for its own financial gain, through more and better targeted advertising, to increase sales," (*Id.* ¶ 57), concessions that Albany Med was motivated by marketing and advertising purposes. Where the purpose of the interception was not "to perpetuate torts on millions of Internet users, but to make money," the crime-tort exception to the party-exception is not satisfied. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023).

***ii. There Is No Liability for "Procurement" or "Aiding and Abetting."***

Plaintiffs allege that Albany Med violated the Wiretap Act when it "procured Google Analytics' services to intercept electronic communications from its website visitors." FAC ¶ 99. Under 18 U.S.C. § 2511(1)(a), (4), and (5), any person who "procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" "shall be subject to suit *by the Federal Government* in a court of competent jurisdiction." 18 U.S.C. § 2511(1)(a) (emphasis added). But the Act creates a private right of action only against those who "intercepted, disclosed, or intentionally used" communications in violation of the Act. 18 U.S.C. § 2520(a). Section 2520(a), under which Plaintiffs bring their Wiretap Act claim, "does not provide a cause of action against aiders and abetters, and, accordingly… plaintiffs may not proceed [] on such theory." *In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001).

When Congress enacted the Wiretap Act in 1986, it specifically excluded civil liability for

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

procurement of an interception (*i.e.*, aiding and abetting), which previously existed under the 1968 predecessor to the Wiretap Act. *See Kirch v. Embarq Mgmt. Co.,* 702 F.3d 1245, 1246-47 (10th Cir. 2012). Courts routinely hold that defendants cannot be liable under section 2520 for "procuring" an interception, because in 1986 Congress amended the section to remove the phrase "or procures any other person to intercept, disclose, or use such communications" as a basis for civil liability. *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *7 (N.D. Cal. Apr. 4, 2025); *see also, e.g.*, *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1088 (N.D. Cal. 2015); *Weston v. Lefiti*, 2023 WL 8458249, at *3 (S.D. Cal. Dec. 5, 2023); *Herzer v. Redstone*, 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018) (agreeing "that secondary liability is not recognized under the [Wiretap Act.]" and finding plaintiff had failed to state a claim); *In re Easysaver Rewards Litig*., 737 F. Supp. 2d 1159, 1183–84 (S.D. Cal. 2010) (dismissing Wiretap Act claim with prejudice as to defendant who received information but did not intercept it because the Wiretap Act liability is limited to the person who engaged in the violation). Because the Wiretap Act does not provide a private cause of action against an entity that is alleged to have procured or aided and abetted another party to intercept a communication, Plaintiffs' Wiretap Act claim should be dismissed as a matter of law.[3]

### C. **Plaintiffs Have Not Alleged Deception for their G.B.L. § 349 Claim (Count II).**

Plaintiffs' second count is for an alleged violation of G.B.L. § 349, a New York state statute which "declares as unlawful '[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995). The G.B.L. provides "a private right of action for 'any person who has been *injured by reason of any violation of this section*.'" *Id.* (emphasis added). Plaintiffs fail to allege a material deception by Albany Med.

Albany Med's website privacy policy, incorporated by reference into Plaintiffs' complaint

[3] Plaintiffs' claim further fails because no "contents" of communications were intercepted. *See* 18 U.S.C. § 2510(8) (defining "contents" as "any information concerning the substance, purport, or meaning of that communication."). "Record" information—such as a user's name, IP address, or browser metadata—merely reflects characteristics of the communication rather than its substance. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (Contents "refers to the intended message conveyed by the communication."). The screenshots included in the Complaint, which are not tied to Plaintiffs' specific visits, purport to show data that could be transmitted via Google Analytics. *See* FAC at ¶¶ 32-33. The information allegedly depicted in the screenshots—such as URLs and HTTP requests—falls squarely within the category of record information, not "contents" of a communication. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, [and] page navigation" are not contents).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(FAC ¶¶ 17–24), makes clear Albany Med's position that, contrary to Plaintiffs' allegations, the information they allege was disclosed is not "personally identifiable information." *See* Markham Decl., Ex. A, Consumer Web Privacy Statement. The policy states that through the website Albany Med collects two types of information: (1) "personal information to process your request or transaction," which is "encrypted and sent to us using a secure means of transmittal," and (2) "general information about the use of our site through the use of cookies" which "do not contain any personally identifiable information and cannot identify or track you personally." *Id.* These policies are not deceptive as a matter of law. *Cf. Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 150 (S.D.N.Y. 2022) (dismissing G.B.L. § 349 claim because "it is not plausible that a consumer would be misled into thinking that Defendant undertook its carbon-footprint calculation in any manner other than the one it describes in its literature"). Because the Complaint is devoid of any allegation that Albany Med's Consumer Web Privacy Statement contains a deception (i.e., that Google Analytics collects PII or can identify visitors personally), Plaintiffs' G.B.L. § 349 claim fails.

### D. Negligence and G.B.L. Claims § 349 Fail for Lack of Injury (Counts II & III).

Under either California or New York law, "negligence claims must result in actual damages from the complained-of conduct." *R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 897 (C.D. Cal. 2024) (citation omitted); *see also Gay v. Garnet Health*, 2024 WL 4203263, at *5 (S.D.N.Y. Sept. 16, 2024). Both California and New York have adopted the economic loss rule, which provides that, "[i]n the absence of personal injury, physical damage to property, a special relationship between the parties, or some other common law exception to the rule, recovery of purely economic loss for negligence is foreclosed." *Stasi v. Inmediata Health Grp. Corp.,* 501 F. Supp. 3d 898, 913; *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001) (economic loss rule "bars recovery in negligence for economic damage absent personal injury or property damage"). Likewise, "[p]laintiffs must allege and prove 'actual injury' to recover under GBL § 349." *Harris v. Dutchess Cnty. Bd. of Co-op. Educ. Servs.*, 25 N.Y.S.3d 527, 542 (N.Y. Sup. Ct. 2015). Plaintiffs allege several vague theories of harm: lost benefit of the bargain, deprivation of economic value of their PII and PHI, invasion of privacy, undermined patient trust, and risk to their "sensitive health-related information." FAC ¶¶ 77–80; 110–111; 121.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

First, there is no injury from loss of economic value of health information where plaintiffs "fail to explain why any alleged acquisition of personal information would necessarily mean that the plaintiffs could not still sell their data in the market they allege exists." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024). Moreover, Plaintiffs do not allege they paid any money to browse Albany Med's free website and accordingly, allege no injury from lost benefit-of-the-bargain. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *22 (N.D. Cal. Aug. 30, 2017) (victims of data breach who failed to allege specific benefit-of-the-bargain losses did not allege an injury); *Goshen v. Mutual Life Ins. Co.*, 98 N.Y.2d 314, 326 (2002) (dismissing G.B.L. § 349 claim which "did not result in a transaction in which the consumer was harmed."). And, Plaintiffs make no allegation that any health care they received was rendered less valuable by Albany Med's alleged use of Google Analytics. *See Estrada v. Johnson & Johnson*, 2015 WL 1440466, at *4 (E.D. Cal. Mar. 27, 2015) (dismissing claim for lack of injury when plaintiff "received exactly what she paid for"). Plaintiffs' allegation that they "would not have used the website in the same manner" had they known about Albany Med's alleged use of Google Analytics "is not a cognizable injury because it conflates the deceptive act with the injury." *See Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (holding that under New York law, to establish a lost benefit of the bargain injury, plaintiff "must show that she did not receive the full value of her purchase, by alleging (for instance) that she paid a price premium due to the deception").

Plaintiffs' claim of undermined patient trust resembles a claim for emotional distress damages which, "although emotional distress damages can be sufficient to sustain a negligence claim," are "too conclusory" if Plaintiffs fail to allege "facts pertaining to the nature and extent of [p]laintiffs' emotional or mental suffering." *R.C.*, 733 F. Supp. 3d at 898. Likewise, "risk of identity theft" "is too speculative" in tracking technology litigation because "this is not a case involving, say, hackers, and it is not a case about the theft of, say, social security or credit card numbers." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019); *see also R.C.*, 733 F. Supp. 3d at 899 ("allegations about the mere risk of future damage are too speculative to satisfy the damages element of a negligence claim under California law").

Bare allegations of "loss of privacy" are insufficient to sustain a negligence claim. *See R.C.*,

733 F. Supp. 3d at 897–98 (although plaintiff alleged "loss of privacy," negligence claim was dismissed for lack of damages). Plaintiffs' vague allegations that Google Analytics can capture the search parameters on Albany Med's "find a doctor" webpage, without providing any details on the searches Plaintiffs actually ran, are not sufficient to allege damages from a privacy violation. *See Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (no privacy injury from use of tracking technologies to capture search terms on medical website because "[a]nyone from a schoolteacher writing a lesson plan for a sex-ed class or a researcher looking to analyze potential findings could enter these searches into an informational health website.").

Even if Plaintiffs had alleged any cognizable injury, their alleged injuries are purely economic and therefore barred by the economic-loss doctrine. Plaintiffs do not plausibly allege any exception to that doctrine, such as personal injury, a special relationship, or fraud. *See In re: Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 961 (S.D. Cal. 2012). Plaintiffs have alleged being in contractual privity with Albany Med and have "failed to show their claim is independent of their contracts with [defendant]." *Moore v. Centrelake Med. Group, Inc.*, 299 Cal. Rptr. 3d 544, 561 (Cal. App. 2d Dist. 2022) (dismissing negligence claim because plaintiffs did not allege any non-economic losses arising from allegation that defendant failed to safeguard their medical information). Accordingly, the economic loss rule bars Plaintiffs' negligence claims.

### E. <u>Plaintiffs Have Not Alleged the Formation of any Contract (Count IV).</u>

Plaintiffs allege that in statements in Albany Med's privacy policy, "Albany Med promised Plaintiffs … their data would not be personally identifiable, nor used for commercial purposes, and that their privacy would be protected" and that this promise "created a legally binding contract" between Plaintiffs and Albany Med. FAC ¶¶ 125-128. While a privacy policy can, in certain circumstances, "form the basis for a breach of express contract claim," this is only the case where a plaintiff alleges "that she was required to read or agree to either of the documents." *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 821 (N.D. Cal. 2023). Even after amending their Complaint, Plaintiffs do not allege they ever saw the privacy policy.

Moreover, Plaintiffs fail to allege that promises were supported by consideration, i.e., the policies contained "shared commitments to which users must abide." *In re Facebook, Inc. Internet*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020). A policy which "merely provides information—not commitments—regarding [defendant's] use of information and how users can control that information… does not constitute a separate contract." *Id.* at 611; *see also D'Antonio v. Smith & Wesson Inc.*, No. 25-CV-03085-PCP, 2026 WL 446310, at *7 (N.D. Cal. Feb. 17, 2026) (dismissing breach of implied contract claim for lack of bargained-for exchange because "[w]hile plaintiffs may have alleged that [defendant] broke a promise" by placing cookies on plaintiffs' devices despite plaintiffs' expressly opting-out, "[plaintiffs] have not alleged that the benefit plaintiffs conferred on [defendant] induced [defendant's] promise.").

**F. <u>Plaintiffs' Unjust Enrichment Claim Fails (Count V).</u>**

Under California Law, unjust enrichment is not a standalone cause of action. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1055 (S.D. Cal. 2023). Rather, "unjust enrichment" describes "the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request.'" *Doe I v. Google LLC*, 741 F. Supp. 3d at 848-49 (citation omitted). Because "plaintiffs have not stated a claim against [defendant] for any unlawful conduct, they have also failed to state an unjust enrichment claim." *Id.* at 849.

Plaintiffs' claim likewise fails under New York law because Plaintiffs also allege breach of contract. FAC ¶¶ 124-130. Count V is not pled in the alternative to their claim of a contract and should be dismissed for this reason alone. *See also Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (unjust enrichment precluded "whenever there is a valid and enforceable contract governing a particular subject matter").

Plaintiffs' unjust enrichment claim also fails because Plaintiffs fail to plausibly allege Albany Med was enriched at their expense. Albany Med's website is free to use. Plaintiffs cannot claim any economic loss to themselves by their use of the Website. They instead assert a pecuniary loss based on an alleged deprivation of the "economic value of their personal property without proper consideration," referring to their PII and PHI. FAC ¶ 77. Plaintiffs, however, do not connect the dots between any alleged value of their private information and any actual loss as to themselves, personally. *See Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *6, 13 (S.D.N.Y. Aug. 17, 2016) ("[A]bsent allegations suggesting that plaintiffs' ability to monetize their browsing information was

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

diminished, this alleged harm remains too conjectural."). Plaintiffs' unjust enrichment claim should therefore be dismissed for failure to state a claim under either California or New York law.

## V. CONCLUSION

For the foregoing reasons, Albany Med respectfully requests that the Court grant its motion and dismiss all of Plaintiffs' claims against Albany Med.

Dated: March 27, 2026

**BAKER & HOSTETLER LLP**

By: ______________________________
RAYMOND O. AGHAIAN

*Attorneys for Defendant,*
ALBANY MED HEALTH SYSTEM