**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
KAYDEN BYRON (SBN 333158)
*kbyron@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL E. SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

VALETTA MCENTYRE and GAYLA SCHNITZER, on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

GOOGLE LLC and ALBANY MED HEALTH SYSTEM,

Defendants.

Case No: 3:25-cv-10483-VC

**PLAINTIFFS' OPPOSITION TO DEFENDANT ALBANY MED'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Judge: Hon. Vince Chhabria
Date: May 7, 2026
Time: 10:00 a.m.
Location: San Francisco, Courtroom 4 – 17th Floor

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .......... ii

STATEMENT OF ISSUES TO BE DECIDED .......... 1

INTRODUCTION .......... 2

ARGUMENT .......... 3

- I. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER ALBANY MED .......... 3
  - A. Albany Med Purposely Directed Its Conduct at California .......... 3
  - B. Plaintiffs' Claims Arise Out of Albany Med's Forum-Related Conduct .......... 6
  - C. The Court's Exercise of Personal Jurisdiction Comports with Fair Play and Substantial Justice .......... 7
- II. PLAINTIFFS PLAUSIBLY ALLEGE ALBANY MED VIOLATED ECPA .......... 8
  - A. Plaintiffs Did Not Consent to Third-Party Interception of Their Electronic Communications .......... 9
  - B. Albany Med Is Liable for Actively Procuring Third Parties to Intercept Plaintiffs' Electronic Communications .......... 11
- III. PLAINTIFFS ADEQUATELY ALLEGE A VIOLATION OF THE NEW YORK GBL AND FOR NEGLIGENCE .......... 12
- IV. ALBANY MED FORMED A CONTRACT WITH PLAINTIFFS .......... 15
- V. PLAINTIFFS PLEAD ALBANY MED WAS UNJUSTLY ENRICHED .......... 16

CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**Cases**

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 15

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ........ 3, 4, 6, 7

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*,
582 U.S. 255 (2017) ........ 6, 7

*Bruton v. Gerber Prods. Co.*,
703 Fed. App'x 468 (9th Cir. 2017) ........ 16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 3, 7, 8

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ........ 11

*Davis v. Cranfield Aerospace Sols., Ltd.*,
71 F.4th 1154 (9th Cir. 2023) ........ 3

*Diamos v. Walmart, Inc.*,
2020 WL 1942322 (C.D. Cal. Jan. 9, 2020) ........ 16

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 9, 17

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 17

*Flores-Mendez v. Zoosk, Inc.*,
2021 WL 308543 (N.D. Cal. Jan. 30, 2021) ........ 14

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 17

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ........ 14

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 11

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021)....17

*In re Google RTB Consumer Privacy Litigation*,
606 F. Supp. 3d 935 (N.D. Cal. 2022)....16

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 132 (D. Conn. 2014)....12

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 (1979)....14

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)....5

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y. 2006)....11, 12

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011)....4

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019)....13

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)....15

*Ochoa v. Church & Dwight Co., Inc.*,
2018 WL 4998293 (C.D. Cal. Jan. 30, 2018)....16

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)....14

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000)....11

*Robinson Helicopter Co. v. Dana Corp.*,
34 Cal. 4th 979 (2004)....14

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)....4

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021)....15

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025)....9

*Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020) ........ 14, 15

*Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200 (9th Cir. 1999) ........ 10

*Williams v. Affinion Grp., LLC*, 889 F.3d 116 (2d Cir. 2018) ........ 12

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) ........ 3, 4

**Statutes**

18 U.S.C. § 2511(1)(a) ........ 2, 5, 9

18 U.S.C. § 2511(2)(d) ........ 2, 9

18 U.S.C. § 2520(a) ........ 5, 11

18 U.S.C. § 2520(c)(2) ........ 11

42 U.S.C. § 1320d-6(a)(3) ........ 9

**Regulations**

45 C.F.R § 164.502(a) ........ 12

45 C.F.R § 164.514(b)(2) ........ 12

45 C.F.R. § 160.103 ........ 12

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether this Court may exercise specific personal jurisdiction over Albany Med where it purposefully directed its conduct at California by procuring a California-based company to intercept, process, and monetize Plaintiffs' highly-sensitive communications through infrastructure located in this forum, and where Plaintiffs' claims arise directly from that conduct;

2. Whether Plaintiffs plausibly allege that Albany Med violated the Electronic Communications Privacy Act ("ECPA") by procuring a third party to intercept Plaintiffs' electronic communications through embedded tracking technologies, thereby disclosing the contents of those communications to that third party;

3. Whether Albany Med's consent defense fails at the pleading stage where Plaintiffs allege they did not provide informed consent to third-party interception, and that any purported consent is vitiated because the interception was undertaken to facilitate the unauthorized disclosure and exploitation of protected health information;

4. Whether the ECPA provides a private right of action against a defendant who procures the interception of communications or discloses their contents, where the statute expressly prohibits such conduct and authorizes suit against any person who engaged in the violation;

5. Whether Plaintiffs plausibly allege that Albany Med engaged in materially deceptive acts and omissions by representing that user data would not be shared or used for commercial purposes, while simultaneously transmitting sensitive information to third parties for monetization;

6. Whether Plaintiffs' negligence claims are not barred by the economic loss rule where they arise from the breach of an independent duty to safeguard sensitive health information and allege harms beyond purely economic loss;

7. Whether Plaintiffs plausibly allege the formation and breach of an enforceable agreement where Albany Med conditioned website use on acceptance of its privacy policy and then acted contrary to the representations contained therein; and

8. Whether Plaintiffs may plead unjust enrichment in the alternative where they allege Albany Med retained a financial benefit derived from the unauthorized use and disclosure of Plaintiffs' personal and health information.

**INTRODUCTION**

Albany Med's motion to dismiss rests on a simple but flawed premise: that it can avoid liability in California while deliberately routing patients' most sensitive communications concerning their protected health information ("PHI"), combined with personally identifying information ("PII") into California through embedded trackers for monetization. The First Amended Complaint, Dkt. No. 37 ("FAC") alleges the opposite. Albany Med embedded Google Analytics, a California-based data extraction and advertising system, into pages of its website, AlbanyMed.org ("the Website"), where users communicated PHI, knowingly causing those communications to be intercepted, processed in, and commercially exploited through infrastructure centered in this forum. Having purposefully availed itself of the benefits of California-based systems and agreed to a contractual relationship governed by California law, Albany Med cannot now disclaim this Court's authority. Rather, its intentional conduct is sufficient to establish personal jurisdiction.

Albany Med's attempt to recast its conduct as the routine use of "standard website technology," Mot. at 1, does not defeat Plaintiffs' claims under the ECPA, 18 U.S.C. § 2510 *et seq*. Plaintiffs do not allege passive analytics; they allege that Albany Med deliberately embedded tracking code that caused Plaintiffs' communications—including the substance of their healthcare-related interactions—to be contemporaneously intercepted by an undisclosed third party, Google. *See* 18 U.S.C. § 2511(1)(a). Those allegations plausibly establish an interception at the pleading stage and defeat Albany Med's effort to invoke the party exception, which does not apply where a defendant procures a third party to intercept communications in transit. Nor does Albany Med's consent defense warrant dismissal. Plaintiffs do not allege that they provided prior, informed consent to the interception and transmission of their communications to a third party for purposes unrelated to their healthcare interactions, and generalized references to "analytics" or website tracking are insufficient to establish such consent, particularly where the communications at issue involve sensitive health-related information. In any event, even if some form of consent could be inferred, the ECPA withdraws that protection where the interception is undertaken "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Plaintiffs allege that Albany Med procured the interception of their communications in order to facilitate the unauthorized disclosure and commercial exploitation of protected health information, an independently unlawful objective that vitiates any purported consent.

Albany Med's remaining arguments fare no better. Plaintiffs plausibly allege materially deceptive practices under New York law based on Albany Med's representations about how it would handle user data. Their negligence claims are not barred by the economic loss rule because the claims arise from an independent duty to safeguard sensitive health information and Plaintiffs allege harms far beyond purely economic loss. Plaintiffs also adequately allege the formation and breach of a contract, as well as unjust enrichment based on Albany Med's retention of benefits derived from the unauthorized use of their data.

At bottom, this case is about a healthcare provider that promised to protect patient information while simultaneously routing that information into a California-based, third-party advertising ecosystem for profit. The law does not permit that result, and Albany Med's motion should be denied.

## ARGUMENT

### I. THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER ALBANY MED

A federal court may exercise specific personal jurisdiction over a non-resident defendant where (1) the defendant purposefully directs its conduct at the forum or purposefully avails itself of the privilege of conducting activities there, (2) the claims arise out of or relate to the defendant's forum-related conduct, and (3) the exercise of jurisdiction comports with fair play and substantial justice. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025) (citation omitted). Plaintiffs bear the burden of satisfying the first two prongs, and because they do, the burden shifts to Albany Med to show that jurisdiction would be unreasonable. *See id.* at 751 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

#### A. Albany Med Purposely Directed Its Conduct at California

The first prong has been said to "incorporate[] two distinct concepts—'purposeful direction' and 'purposeful availment.'" *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (citations omitted). While the "purposeful direction" test "typically" applies to tort claims and the "purposeful availment" test "typically" applies to contract cases, there is no "rigid dividing line between these two types of claims." *Id.* (citations and internal quotations omitted). "Indeed, the first prong 'may be satisfied by purposeful availment,' 'by purposeful direction,' or 'by some combination thereof.'" *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) ["*Yahoo!*"]).

For the "purposeful direction" analysis, sometimes called the *Calder* effects test, courts "focus[] on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Briskin*, 135 F.4th at 751 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)). This test is satisfied where the defendant (1) commits an intentional act, (2) expressly aimed at the forum, (3) causing harm the defendant knows is likely to be suffered there. *Id.* "[I]n contract cases, [courts in this Circuit] typically inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract. *Yahoo!*, 433 F.3d at 1206 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). As detailed below, the Court may exercise personal jurisdiction over Albany Med under either test, and especially when applied in combination. In sum, Albany Med purposefully directed its conduct toward California by operating an interactive website that incorporated Google Analytics and by contracting with Google—under an agreement governed by California law—to intercept users' protected health information. Through these actions, Albany Med deliberately engaged with this forum, availed itself of the privilege of conducting activities here, and consummated a transaction within California.

**1. Albany Med's Interactive Website Causes the Interception and Monetization of PHI Through California-Based Infrastructure**

In the internet age, the Ninth Circuit has made clear that the "mere passive" operation of a website—even one accessible nationwide—does not establish personal jurisdiction. Rather, jurisdiction lies where there is "something more" showing that the defendant purposefully directed its conduct at the forum. *Briskin*, 135 F.4th at 751-53. That standard is satisfied where a defendant affirmatively deploys tracking technology to collect user data and transmit it for processing and commercial exploitation. *Id.* at 756, 759-60.

Albany Med's conduct fits squarely within that framework. It did not operate a passive website; it designed its webpages to elicit sensitive health information while simultaneously embedding Google Analytics to capture and monetize that data. FAC ¶¶ 9-15, 25-44. As in *Briskin*, this integration caused users' communications to be routed into Google's infrastructure, which Albany Med knew to be centered

in California, for processing and exploitation. *Id.* ¶¶ 4, 8. That conduct was deliberate and integral to Albany Med's tracking and marketing strategy. *Id.* ¶ 44.

These allegations establish intentional acts expressly aimed at California, with injuries arising from the interception and exploitation of communications through California-based systems. That is more than sufficient to satisfy the "something more" requirement under *Briskin*.

Albany Med's counterarguments miss the mark. Its reliance on Plaintiffs' non-California residency is misplaced; personal jurisdiction turns on the defendant's contacts with the forum, not the plaintiff's domicile. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). Here, the alleged interception and monetization occurred, in substantial part, through California-based infrastructure.

Nor does Albany Med's characterization of itself as a "regional" provider alter the analysis. The question is not the geographic scope of its business, but whether it purposefully directed the challenged conduct at California. By routing user communications into and exploiting California-based systems, it did exactly that. FAC ¶¶ 4, 8. And in any event, Albany Med admits it provides telehealth services to California patients, confirming its deliberate engagement with this forum. *Id.* ¶¶ 1, 4.

**2. Albany Med's Procurement of Google**

The ECPA provides a private right of action to "any person whose . . . electronic communication[s] [are] intercepted, disclosed, or intentionally used in violation of" the Act. 18 U.S.C. § 2520(a). The statute prohibits not only direct interception, but also the procurement of another to intercept such communications. *Id.* § 2511(1)(a). Thus, a defendant may be held liable where it causes or facilitates a third party's interception of communications, even if it does not itself perform the interception.

Plaintiffs allege that Albany Med did exactly that by contracting with Google to embed Analytics into webpages through which users transmitted sensitive health-related information. FAC ¶¶ 4, 8, 25-44. That integration was not merely incidental to the operation of the Website; it was designed to capture user interactions and transmit them to Google for processing and commercial use. *Id.* ¶¶ 4, 8, 44. In doing so, Albany Med caused Google to intercept Plaintiffs' communications in real time. *See id.* ¶¶ 91, 99. This is paradigmatic procurement under § 2511(1)(a).

As explained infra in Section II(B), Albany Med cannot escape liability for procurement, and that procurement is central to the jurisdictional analysis. Albany Med did not merely use a third-party tool; it

deliberately procured Google—a California company—through a written agreement that expressly contemplates the application of California law and to resolve any disputes in Santa Clara, California. *Id.* ¶4, 8. As a result of that agreement, Albany Med caused Google to intercept Plaintiffs' communications in real time, after which those communications were routed into California for processing and monetization for both Google and Albany Med's commercial benefit. Albany Med's liability thus arises from its decision to route those communications through California, using a tool procured through a contract under California law. The forum is therefore not merely the location of a third-party service provider, but the locus of the challenged interception, processing, and exploitation itself.

Accordingly, Albany Med's procurement of Google's interception provides an independent and reinforcing basis for the exercise of specific personal jurisdiction.

**B. Plaintiffs' Claims Arise Out of Albany Med's Forum-Related Conduct**

The second prong requires that Plaintiffs' claims "arise[] out of or relate[] to" the defendant's forum-related activities. *Briskin*, 135 F.4th at 750-51. This requirement is satisfied where the defendant's contacts with the forum are connected to the alleged injury. That standard is met here.

Plaintiffs' claims are premised on the interception, transmission, and commercial use of their communications. Those activities were not confined to New York; they were carried out through Google's California-based infrastructure, where the data was received, processed, and monetized. In other words, the alleged injury arises directly from the very conduct that connects Albany Med to California—its intentional routing of user data into that forum.

Defendant's reliance on *Bristol-Myers*, Mot. at 6, is misplaced. There, the Supreme Court held that specific jurisdiction requires an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 264 (2017) (citation omitted). It rejected the California Supreme Court's "sliding scale" approach, which applied a "relaxed" analysis to the requisite connection between the forum and the specific claims at issue where the defendant has extensive forum contacts unrelated to the claims at issue. *Id.* In that case, "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* Critically, the plaintiffs disclaimed "to have suffered harm" in California and, additionally "all the conduct

giving rise to the nonresidents' claims occurred elsewhere." *Id.* at 265. The Court emphasized that "the mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.*

This case is fundamentally different. Plaintiffs allege that their claims arise from Albany Med's California forum-directed conduct—namely, its procurement of Google, a California company, through a contract governed by California law, and the subsequent intentional transmission of Plaintiffs' communications containing PHI into California for interception, processing, and commercial exploitation. Nor is this a case involving the kind of "attenuated" or "unconnected" contacts rejected in *Bristol-Myers*. The Supreme Court made clear that specific jurisdiction is proper where there is an "affiliation" between the forum and the underlying controversy, *i.e.*, an activity or an occurrence that took place in California. *See id.* at 262 (citation omitted). Here, the interception and exploitation of their communications occurred, in substantial part, in California, through Google's infrastructure. That is precisely the type of forum-linked conduct that *Bristol-Myers* requires.

### C. The Court's Exercise of Personal Jurisdiction Comports with Fair Play and Substantial Justice

Once a plaintiff establishes purposeful direction and relatedness, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would be unreasonable. *Briskin*, 135 F.4th at 751 (quoting *Burger King*, 471 U.S. at 477). Albany Med makes no such "compelling case" here. On the contrary, the exercise of jurisdiction in California is eminently reasonable given Albany Med's conduct, including its purposeful use of Google Analytics and its contractual relationship with Google.

First, Albany Med's deliberate integration of Google Analytics into its website establishes that it knowingly utilized California-based infrastructure as part of its business operations. FAC ¶ 4, 8. This was not a passive or incidental relationship. Albany Med affirmatively registered for, agreed to, and repeatedly utilized Google's services to collect, transmit, and analyze user data—conduct that necessarily depended on systems operating in California. *Id.* at ¶¶ 4, 8, 25-44. By choosing to route sensitive user communications into that ecosystem, Albany Med created ongoing, systematic ties to this forum.

Second, Albany Med expressly agreed with Google that disputes relating to its use of Analytics would be governed by California law and subject to jurisdiction in California courts. *Id.* ¶¶ 4, 8. While that agreement does not independently establish jurisdiction here, it confirms that Albany Med could reasonably anticipate being haled into court in California in connection with disputes arising from its use of those services—like here. *See Burger King*, 471 U.S. at 482 (emphasizing that contractual terms and the parties' course of dealing are relevant to the foreseeability of litigation in the forum).

Third, Albany Med's own operations confirm that litigating in California is neither unfair nor unexpected. Albany Med provides telehealth and other medical services to patients who reside in California—contacts that it tracks and acknowledges. FAC ¶ 1, 4, 8; *see also* Dkt. No. 42-1, Decl. of Matthew Markham (setting forth a precise percentage of patients Albany Med treats in California). Like its agreement with Google, these contacts may not independently establish general jurisdiction by themselves, but they do reinforce that Albany Med's activities are not wholly outside of California. In the context of healthcare—where the confidentiality and proper handling of sensitive patient information is paramount—Albany Med knows that California has a strong interest in adjudicating claims arising from the alleged interception and misuse of such data through systems operating within its borders and, by knowingly treating California patients, it could be haled into Court here.

Finally, exercising jurisdiction promotes efficiency and judicial economy. The core issues in this case—whether the use of tracking technologies to intercept and monetize user communications violates federal and state law—are already being litigated in this District in related actions involving the same underlying technologies. Resolving these issues in a single forum avoids duplicative litigation and inconsistent results.

In sum, Albany Med deliberately chose to engage in conduct that depends on California-based systems, agreed that disputes arising from that conduct would be governed by California law and adjudicated in California courts, treats patients in California, and thus cannot plausibly claim that litigating here is unfair or unexpected. The exercise of personal jurisdiction therefore comports with fair play and substantial justice.

## II. PLAINTIFFS PLAUSIBLY ALLEGE ALBANY MED VIOLATED THE ECPA

To state a claim under the ECPA, Plaintiffs must plausibly allege that Albany Med "intentionally intercept[ed]" their electronic communications or, as relevant here, "procure[d]" a third party to do so. 18

U.S.C. § 2511(1)(a). Although the statute contains an exception where a party to the communication (or one acting with prior consent) engages in the interception, that exception does not apply where the interception is undertaken "for the purpose of committing any criminal or tortious act." *Id.* § 2511(2)(d).

**A. Plaintiffs Did Not Consent to Third-Party Interception of Their Electronic Communications**

Albany Med first argues that Plaintiffs' ECPA claims are barred by consent because "Plaintiffs allege that they were communicating 'to Albany Med.'" Mot. at 9 (record citations omitted). Plaintiffs do not dispute "[t]he one-party consent exemption provides that it is not unlawful for 'a person not acting under color of law to intercept a wire, oral, or electronic communication' when that person is a party to the communication 'or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted' to commit a crime or tort. *See Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1052-53 (N.D. Cal. 2025) (quoting 18 U.S.C. § 2511(2)(d)). Like in *Shah*, Defendant here "argues that the 'one-party consent exemption' applies because Defendant was a party to the communications." *See id.* at 1053; *see also* Mot. at 9-10. But also like in *Shah*, "Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts." *Id.* (record citation omitted). "Because Defendant's actions are allegedly tortious, the one-party exemption does not apply." *Id.* (citing *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) ["*Meta Platforms*"] (holding that the "one-party consent exemption" does not apply when the party acts for the purpose of committing a tort)). Here, Plaintiffs allege "[t]he one-party consent exception of § 2511(2)(d) does not apply" because "Albany Med's disclosure of [individually identifiable health information ("IIHI")][1] to [third parties] violates HIPAA's criminal provision, which prohibits knowingly disclosing individually identifiable health information," FAC ¶ 100 (citing 42 U.S.C. § 1320d-6(a)(3)). "Because Albany Med's consent to Google's interception was given for the purpose of

[1] IIHI is information, including demographic data, that relates to the individual's past, present or future physical or mental health or condition, the provision of health care to the individual, or the past, present, or future payment for the provision of health care to the individual, and that identifies the individual or for which there is a reasonable basis to believe it can be used to identify the individual, including common identifiers like name, address, birth date, or Social Security Number. *See* U.S. Dep't of Health & Human Servs., Health Information Privacy Laws and Regulations, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html

committing this criminal act, the consent exception is unavailable." *Id.* In short, Plaintiffs allege, and the Court must accept as true, Albany Med did not just procure Google's interception of their PHI and PII in violation of the ECPA, but did so in order to disclose and exploit protected health information without authorization. Thus, the crime-tort exception is a bar to Albany Med's invocation of consent as a defense.

*Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ("*Kaiser*"), and *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200 (9th Cir. 1999), on which Albany Med principally relies to argue that no crime-tort exception applies, Mot. at 9-10, are distinguishable. In *Kaiser*, the court concluded that the complaint failed to invoke the crime-tort exception because it treated the interception itself—and Kaiser's subsequent use of the data for ordinary "market research and consumer analysis"—as the relevant wrongful conduct. 2024 WL 1589982, at *10. The court thus characterized the only apparent purpose as market research for Kaiser's own benefit.

Here, by contrast, Plaintiffs allege more. Albany Med allegedly procured Google to intercept communications revealing PHI and IIHI for downstream commercial exploitation by both Albany Med and Google, notwithstanding healthcare-specific confidentiality obligations and contrary privacy representations. FAC ¶¶ 25-44, 98, 100. Properly understood, Plaintiffs' theory is not that the crime or tort was the interception itself, but that Albany Med thereby accomplished a separate unlawful disclosure and exploitation of protected health information, in violation of HIPAA's criminal provisions, bringing the communications within the crime-tort exception.

Nothing in the Ninth Circuit's decision in *Sussman* alters this analysis. There, as in *Kaiser*, the court held that the relevant inquiry is not whether "the interception itself violated another law," but whether the defendant's purpose—its intended use of the intercepted communications—was criminal or tortious. 186 F.3d at 1202. *Sussman* also clarifies that "the existence of a lawful purpose does not mean that the interception is not *also* for a tortious or unlawful purpose." *Id.* (emphasis added). Regardless, there the Wiretap Act claim failed, but only because plaintiffs "never claimed" that the recordings were made for the purpose of committing any independent wrong; the only alleged misconduct was the recording itself. *Id.* By contrast, Plaintiffs here allege that Albany Med procured the interception as a means of effectuating a separate unlawful disclosure and commercial exploitation of protected health information, bringing this case squarely within the crime-tort exception.

**B. Albany Med Is Liable for Actively Procuring Third Parties to Intercept Plaintiffs' Electronic Communications**

Albany Med argues it cannot, as a matter of law, be civilly liable for procuring a third party to intercept Plaintiffs' PHI and PII in violation of 18 U.S.C. § 2511(1)(a) and for intentionally disclosing the contents of Plaintiffs' "wire, oral, or electronic communication[s]" in violation of 18 U.S.C. § 2511(1)(c) because they do not provide a private right of action. Mot. at 10. That argument overreads, and thus misconstrues, the law in this Circuit.

Section 2511(1)(a) prohibits any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 USCA § 2511. The statute's civil enforcement mechanism provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). Available relief includes equitable and declaratory relief, compensatory damages, punitive damages, and attorney's fees, with statutory damages of at least $10,000 or $100 per day of violation. *Id.* § 2520(c)(2)

Despite the broad language of § 2511(1)(a), some courts interpreting § 2520's civil remedy have concluded that the statute permits recovery only against those who directly commit a violation, and not against those who merely aid and abet it. *See Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015). Those decisions rely on *Peavy v. WFAA-TV, Inc.*, which observed that Congress removed the term "procures" from § 2520 in the 1986 amendments and suggested that civil liability does not extend to procurement. 221 F.3d 158, 168-69 (5th Cir. 2000).

But courts are divided on whether the 1986 amendment *actually* eliminates civil liability for procurement, as opposed to merely foreclosing secondary, aiding-and-abetting theories. In *Lonegan v. Hasty*, the court held that "the more natural reading of the amended statute shows no intent on the part of Congress to eliminate the private right of action for procurement violations." 436 F. Supp. 2d 419, 428 (E.D.N.Y. 2006). Under that reading, a defendant who procures an interception directly violates § 2511(1)(a), and thus falls within § 2520's authorization to recover from any person who "engaged in that

violation." *Id.* Courts adopting this interpretation have accordingly concluded that a procurer is not merely a secondary actor, but a primary violator of the statute. *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 148 n.2 (D. Conn. 2014), *aff'd*, 889 F.3d 116 (2d Cir. 2018).

That interpretation is more consistent with the statutory text, which expressly prohibits procurement as a direct violation of § 2511(1)(a). Nothing in § 2520 suggests Congress intended to carve out one category of primary violators from civil liability.

In any event, dismissal is unwarranted even under the narrower line of cases because Plaintiffs do not rely solely on a procurement theory. They also allege that Albany Med independently violated § 2511(1)(c) by disclosing the contents of Plaintiffs' electronic communications to Google. FAC ¶ 98. Those communications contain individually identifiable health information and PHI, and their transmission to Google constitutes a "disclosure" under the ECPA as well as an unlawful disclosure under HIPAA. *Id.* (citing 45 C.F.R. §§ 160.103; 164.502(a); 164.514(b)(2)). That independent basis for liability is sufficient to defeat dismissal.

## III. PLAINTIFFS ADEQUATELY ALLEGE A VIOLATION OF THE NEW YORK GBL AND FOR NEGLIGENCE

Plaintiffs allege Albany Med "provides paid healthcare services to New York consumers" and that, in its execution of this function, "carried out a plan, scheme, and course of conduct that was consumer-oriented and directed at the public at large, including Plaintiffs and other Class Members who used AlbanyMed.org to search for doctors and schedule medical appointments." FAC ¶ 105. Whenever a user visited AlbanyMed.org, "they were presented with a cookie banner stating: 'By continuing to navigate our website, you agree to our privacy policy and terms of use'" and "Albany Med designed this banner specifically to direct users to its privacy policy and to obtain their agreement to its terms." *Id.* ¶ 106. But because a reasonable consumer reading Albany Med's privacy policy would understand it to mean that their browsing activity on AlbanyMed.org, including searches for doctors by specialty and condition, would not be shared with third parties for commercial purposes, would not be used to identify them personally, and would not be transmitted to outside parties for advertising, "Albany Med engaged in materially deceptive acts, practices, and omissions likely to mislead a reasonable consumer." *Id.* ¶ 107; *see also id.* (detailing specific affirmative misrepresentations). Albany Med also deceptively omits that it embeds trackers,

specifically Google Analytics, on its website and that Google "would intercept and transmit users' PII and PHI to Google in real time, and that this data would be used for commercial advertising purposes—material facts that Albany Med was obligated to disclose given the affirmative representations it made to the contrary." *Id.* ¶ 108.

Albany Med moves to dismiss based on a conclusory assertion that the information it collects and discloses "is not 'personally identifiable information.'" Mot. at 12 (citation omitted). But that assertion merely contradicts the FAC's well-pled allegations, which must be accepted as true at this stage, that Albany Med does, in fact, disclose PII to Google. *See id.* (acknowledging its argument is "contrary to Plaintiffs' allegations"). The FAC pleads with specificity how the information transmitted to Google constitutes PII. *See* FAC ¶¶ 25-44.

Separately, Albany Med argues Plaintiffs' GBL and negligence claims fail for lack of injury. Mot. at 12-14. But Plaintiffs do plead injury, including (i) deprivation of the economic value of their personal property without proper consideration; (ii) because medical and health-related information is highly private, the interception of related data can result in significant embarrassment, stigma, and even discrimination; (iii) an ongoing chilling effect on digital healthcare communications which renders them unable to confidently use AlbanyMed.org to seek medical information, locate healthcare providers, research treatments, or manage their healthcare without fear that their activities are being intercepted by third parties; and (iv) because their data has been intercepted by Google, it is beyond their control, and this creates an ongoing risk that their sensitive health-related information may be further processed, combined with other data sources, or potentially used by additional third parties, causing continued and future harm. FAC ¶¶ 72-80.

These allegations are adequate to allege actual harm under § 349. *See McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1038 (N.D. Cal. 2019) (Actual harm met where non-conclusory allegations defendants collected and used personal data that is "identifiable or associable with specific, individual child users, is as persistent as a social security number, and can be used to track, profile, and target children across multiple devices and over time." (citations omitted)). Further, "Plaintiffs paid for healthcare services from Albany Med, and would not have been willing to pay the same amount, or to use Albany Med's services at all, had they known Albany Med's privacy representations were false." FAC ¶ 111. In *Orlander v. Staples, Inc.*, 802

F.3d 289, 301 (2d Cir. 2015), the Second Circuit held that plaintiff, who pled that "he would not have purchased [a set of services] had he known that [d]efendant intended to decline to provide him any [such] services" during the first year of his contract, "sufficiently alleged an injury stemming from [a] misleading practice" under the GBL. The same is true here. *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 425 (E.D. Va. 2020) (relying on *Orlander* and finding "[f]or purposes of this definition [of injury], Plaintiffs' allegations that they would not have entered into a transaction with Capital One had they known about the inadequate data security is a cognizable, and thus sufficient, ground for damages").

Finally, Albany Med argues the economic loss rule bars Plaintiffs' negligence claims because, according to Albany Med, "[e]ven if Plaintiffs had alleged any cognizable injury," which they do, "their alleged injuries are purely economic and therefore barred by the economic-loss doctrine." Mot. at 14. Albany Med further argues "Plaintiffs do not plausibly allege any exception to that doctrine, such as personal injury, a special relationship, or fraud." *Id.* But Plaintiffs do not allege only economic harm, thus the Court need not even consider whether an exception exists to the doctrine. *See Flores-Mendez v. Zoosk, Inc.*, 2021 WL 308543, at *3 (N.D. Cal. Jan. 30, 2021) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 991 n.7 (2004) (only "[i]f plaintiffs' harms were purely economic, [would the Court] be required to reach the question of whether any exception, such as a 'special relationship,' exists") (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979)). Here, like in *Florez-Mendez*, here there is "[n]o need," because "Plaintiffs allege," among other harms, the "risk of embarrassment[] and enlarged risk of identity theft as harms and so do not allege pure economic loss." *Id.* As Plaintiffs also allege, "[o]nce intercepted by Google Analytics, Plaintiffs' . . . data is beyond their control" and "[t]his creates an ongoing risk that their sensitive health-related information may be further processed, combined with other data sources, or potentially used by additional third parties, causing continued and future harm." FAC ¶ 80.

But even if the Court were to find Plaintiffs' harms were purely economic, it should still not apply the economic loss rule. "[T]he statutory protection afforded to medical information is rooted in common law duties traditionally serving as the basis for lawsuits, including the duty not to publicly disclose private facts." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 914 (S.D. Cal. 2020). "Therefore, to the extent the economic loss rule [would otherwise] apply, it is plausible a common law exception to the rule

also applies" and "at this stage in the litigation, the economic loss doctrine does not defeat Plaintiffs' negligence claim." *Id.*

## IV. ALBANY MED FORMED AND BREACHED A CONTRACT WITH PLAINTIFFS

To state a claim for breach of contract under New York or California law, a plaintiff must plausibly allege mutual assent and consideration. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). These same principles govern online agreements, but courts apply them with particular care where assent is alleged to arise from website interactions. *Id.* at 855-56. At the pleading stage, the question is not whether Albany Med will ultimately establish the existence of an enforceable agreement, but whether Plaintiffs plausibly allege facts supporting mutual assent and breach.

Albany Med argues that no contract was formed because Plaintiffs were not required to affirmatively agree to the Privacy Policy or Terms of Use and may not have read them. Mot. at 14. But Plaintiffs allege that when users first navigate to AlbanyMed.org, they are presented with a cookie banner stating: "By continuing to navigate our website, you agree to our privacy policy and terms of use." FAC ¶ 17. Users may follow hyperlinks to review those policies or continue using the website. *Id.* At minimum, these allegations plausibly support that Albany Med conditioned continued use of its website on assent to its stated terms.

To be sure, courts distinguish between more robust forms of online assent (such as clickwrap) and less explicit forms (such as browsewrap), and have expressed concern about enforcing terms where users lack reasonable notice. *Berman*, 30 F.4th at 856; *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). But that inquiry is highly fact-specific, turning on the conspicuousness of the notice, the design of the interface, and what a reasonable user would understand. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 472-73 (2021). Those issues cannot be resolved on a motion to dismiss, particularly where, as here, Plaintiffs allege they were presented with an express statement that continued use constituted agreement.

Albany Med's argument that its Privacy Policy contains no enforceable promises likewise fails at this stage. Plaintiffs allege that Albany Med represented it would not collect or share users' personally identifiable and sensitive health information in the manner alleged, yet simultaneously embedded tracking technology that transmitted such information to Google for analytics and targeted advertising. FAC ¶ 26. These allegations plausibly describe a set of representations that go beyond mere informational disclosures and instead constitute commitments regarding the handling of user data.

At a minimum, Plaintiffs have plausibly alleged that Albany Med offered terms governing its use of user data, that users were informed continued use signified agreement, and that Albany Med breached those terms by permitting the undisclosed interception and transmission of sensitive information. *See In re Google RTB Consumer Privacy Litigation*, 606 F. Supp. 3d 935, 943 (N.D. Cal. 2022) (finding breach plausibly alleged where privacy policy representations conflicted with data-sharing practices). That is sufficient to survive dismissal at this stage.

## V. PLAINTIFFS PLEAD ALBANY MED WAS UNJUSTLY ENRICHED

Albany Med argues there is no independent cause of action for unjust enrichment under California law. *See* Mot. at 15. But in California, where a plaintiff alleges unjust enrichment as a standalone cause of action, "a court may construe the cause of action as a quasi-contract claim seeking restitution." *Diamos v. Walmart, Inc.*, 2020 WL 1942322, at *4 (C.D. Cal. Jan. 9, 2020) (quotations omitted); *see also Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 470 (9th Cir. 2017) ("the California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed"). While unjust enrichment may not enlarge the remedies available to a putative class, Plaintiffs may appropriately plead it in the alternative at this stage of the litigation. *See id.* ("Alternatively, the Court construes these allegations as sufficiently stating a claim under quasi-contract for the nationwide class that cannot sue under California consumer statutes that would otherwise provide for restitution."); *see also Ochoa v. Church & Dwight Co., Inc.*, 2018 WL 4998293, at *5 (C.D. Cal. Jan. 30, 2018) ("The Court . . . disagrees with Church & Dwight's contention that the unjust enrichment claim must be dismissed because it is not an independent cause of action."). Because they alleged Albany Med retained a profit from disclosing Plaintiffs' PII and PHI to Google for commercial gain, *see e.g.,* FAC ¶¶ 131-135, Plaintiffs have sufficiently plead an unjust enrichment claim.

Because Plaintiffs sufficiently state violations of ECPA, breach of contract, and negligence, the Court should reject Albany Med's argument that, because "plaintiffs have not stated a claim against [defendant] for any unlawful conduct, they have also failed to state an unjust enrichment claim." Mot. at 15 (citation omitted).

Albany Med's contention that "an unjust enrichment claim is precluded whenever there is a valid

and enforceable contract governing a particular subject matter," *id.* (quotation and citations omitted), contradicts its own argument that Plaintiffs have not adequately pleaded the formation of a contract. If the Court were to accept Albany Med's position, it would necessarily concede the existence of a contract. In any event, this argument does not undermine Plaintiffs' unjust enrichment claim, as "plaintiffs may plead this claim as an alternative at this juncture, even if [a] contract claim" is alleged. *Meta Platforms*, 690 F. Supp. 3d at 1086 (citation omitted).

Finally, Albany Med's assertion that "Plaintiffs fail to plausibly allege Albany Med was enriched at their expense," Mot. at 15, is contradicted by the Complaint's allegations that Plaintiffs' "private and personal data, including their PHI, IP addresses, and digital identifiers, have a recognized monetary value in today's digital economy," FAC ¶ 73, and that "Plaintiffs and other Class Members conferred economic benefits on Albany Med in the form of profits resulting from the use of the Class's PII and PHI to improve Albany Med's marketing efforts," *id.* ¶ 132. These allegations are sufficient to state a claim for unjust enrichment. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1038 (S.D. Cal. 2023) (claim viable where plaintiff alleged a benefit conferred through the use and dissemination of personal information); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *4 (W.D. Wash. Dec. 19, 2023) (finding unjust enrichment adequately pleaded where plaintiff alleged her data had financial value and was used for targeted advertising); *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 968 (N.D. Cal. 2021) (same).

Accordingly, the Court should find that Plaintiffs have adequately alleged unjust enrichment.

## CONCLUSION

The Court should deny the motion in its entirety. If it finds that it has specific personal jurisdiction over Albany Med, but that the FAC should be dismissed in any other respect, Plaintiffs respectfully request that it do so without prejudice.

Dated: April 10, 2026

Respectfully Submitted,

/s/ Trevor Flynn

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*

TREVOR FLYNN
*tflynn@fmfpc.com*
KAYDEN BYRON
*kbyron@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
DANIEL E. SACHS
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiffs***