UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| VALETTA MCENTYRE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALBANY MED HEALTH SYSTEMS,<br><br>Defendant. | Case No.  25-cv-10483-VC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 42 |

Albany Med's motion to dismiss for lack of personal jurisdiction is granted. This order assumes the reader's familiarity with the facts of the case, the parties' arguments, and the applicable law.

A court can exercise specific personal jurisdiction over a defendant if: (1) the defendant purposefully directed activities towards the forum or purposefully availed itself of the privilege of conducting activities in the forum state; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction would be reasonable. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750–51 (9th Cir. 2025) (citation modified). The first and third requirements are not satisfied here.

With respect to the first requirement, the specific form of the test depends on the type of claim at issue. For claims sounding in tort, the Ninth Circuit applies the "purposeful direction"

test, which emphasizes where the effects of the defendant's actions are felt. *See Briskin*, 135 F.4th at 751; *see also Calder v. Jones*, 465 U.S. 783 (1984). For claims sounding in contract, the "purposeful availment" test is used. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). This test focuses on whether the defendant deliberately invoked the benefits and protections of the forum state's laws, such it would be fair to subject the defendant to that state's jurisdiction. *See id.*; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). However, the line between the two tests is not rigid, and the first prong of the specific jurisdiction analysis may be satisfied by either test or "by some combination thereof." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).[1]

Purposeful direction requires that the defendant: (1) committed an intentional act; (2) aimed that act at the forum state; and (3) knew that the act would cause harm to be suffered in the forum state. *Briskin*, 135 F.4th at 751. In *Briskin*, these requirements were satisfied as to Shopify, a provider of payment processing services that deployed tracking technology to collect data from customers of merchants that had contracted with Shopify, including customers in California. *See id.* at 755–56. The dispute there was whether Shopify's conduct was aimed at California or whether Shopify's contact with California was "mere happenstance." *See id.* at 756. In holding that Shopify aimed its conduct at California, the panel analogized Shopify's contact with the state as being akin to the contact made by a "third party who physically entered a Californian's home by deceptive means to take personal information from the Californian's files for its own commercial gain." *Id.* Unlike Shopify, which operated nationwide, Albany Med is a regional health platform that serves only upstate New York and parts of Vermont and

---

[1] The Ninth Circuit recently used the purposeful direction test in *Briskin*, a data privacy case with similar allegations as in this case. *See* 135 F.4th at 748–49. However, unlike the claims in *Briskin*, the claims in this case include breach of contract and negligence. *See id.* at 749 n.7; FAC (Dkt. No. 37) at 26–28. The purposeful direction test is typically not used for such claims. *See Briskin*, 135 F.4th at 751 ("*Calder* effects test" is used to analyze purposeful direction); *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("[I]t is well established that the *Calder* test applies only to intentional torts, not to the breach of contract and negligence claims presented here.").

Massachusetts. Although its website can be viewed nationally, the content on its website is oriented to its service area and its paid advertising is targeted at people who live in that area. Almost the entirety of Albany Med's patient population is based in New York. In this context, the *Briskin* analogy of taking data from Californians' homes falls apart because Albany Med is not focused on Californians at all. It simply happens to use an advertising and marketing service that is run out of California. Albany Med's alleged conduct here is more analogous to a New York company using a Gmail account to commit wrongs against people in New York. A plaintiff could never haul that company into California court simply because Gmail runs out of California.[2] As the plaintiffs mention fleetingly, 0.03% of Albany Med's telehealth population and 0.06% of its inpatient and outpatient population lives in California. *See* Pl.'s Opp. (Dkt. No. 43) at 5; Markham Decl. (Dkt. No. 42-1) ¶ 5–6. Perhaps if one of the named plaintiffs were a resident of California at the time of the alleged wrongdoing, and perhaps if there were plausible allegations that Albany Med targeted that plaintiffs specifically (or Californians generally), that would matter. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("It is the defendant's conduct that must form the necessary connection with the forum state"). But on the fact of this case, it does not.

Purposeful availment, which requires that the defendant engage in affirmative conduct to establish minimum contacts with the state, is also lacking here. *See Picot*, 780 F.3d at 1212. Although the mere existence of a contract in the forum state is not enough, the terms and contemplated consequences of the contract and the context surrounding it—such as the

---

[2] At the hearing, the plaintiffs suggested that Albany Med's conduct goes beyond simply using a California-based tool to harm patients in the Northeast. Rather, the plaintiffs contend, the harm consists of the patients' data being routed to a third party for monetization, and that occurs in California. Thus, according to the plaintiffs, a more apt analogy is that of the plaintiffs' data being physically taken to California for storage and exploitation. But even under that analogy, harm is experienced by the people the data belongs to, not the data itself. The complaint alleges the following harms to the plaintiffs: (1) the deprivation of the monetary value of their data; (2) potential embarrassment and stigma from the interception of their private health data; and (3) undermining of patient trust. It is difficult to see how plaintiffs in the Northeast experience these harms in California, even if that is where their data is processed. *Cf. Calder*, 465 U.S. at 789–90 (holding that injury in a libel case was primarily felt in the state where the plaintiff lived and where the magazine that published the libelous article had its largest circulation).

negotiations leading up to the contract and the parties' course of dealing—can establish that the defendant actively procured the privilege of doing business in the state. *See id.*; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985). Thus, entering a decades-long business relationship with a financial advisor in the forum constitutes purposeful availment, whereas entering a contract of adhesion does not. *See Silk v. Bond*, 65 F.4th 445, 457–58 (9th Cir. 2023); *WhatsApp Inc. v. NSO Group Technologies Ltd.*, 472 F. Supp. 3d 649, 675 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021). The alleged facts here are closer to the latter situation than the former. The plaintiffs allege that, to use Google Analytics on its website, Albany Med had to register an account and accept Google's terms of service, which designate California as the forum for disputes arising from the agreement and dictate that California law will govern such disputes. But nothing in the complaint suggests that Albany Med did anything more than accept terms it had no ability to negotiate. Again, signing up for Google Analytics seems more like signing up for a Gmail account than negotiating a business relationship in California. And even if doing so resulted in patients' data being routed to California, the only reason for that is that Google happens to be based in California, not because Albany Med wanted the data to go to California. In other words, Albany Med's contact with California is the kind of fortuitous contact that does not justify the exercise of personal jurisdiction. *See Briskin*, 135 F.4th at 758; *Burger King*, 471 U.S. at 475.

For similar reasons, the third requirement of the specific personal jurisdiction inquiry— whether it would be reasonable to exercise jurisdiction—is also not satisfied here. To evaluate the reasonableness of exercising jurisdiction, the Ninth Circuit weighs seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Briskin*, 135 F.4th at 761.

Not only is there an alternative forum for this dispute, but a far more appropriate one at that. This case is brought by two New York plaintiffs against a New York defendant for claims under New York and federal law. The overwhelming majority of the proposed class is comprised of New York residents. New York has a far more concrete interest in protecting the privacy interests of its residents and ensuring that its unfair competition law is followed than California does in what the plaintiffs characterize as "the interception and misuse of . . . data through systems operating within its borders." Pl.'s Opp. at 8. In fact, given that healthcare is a core police power of states, there are few disputes New York would have a stronger interest in than one between New York citizens and a New York-based health provider. And after Google's dismissal, this case is no longer related to *Doe I v. Google* (Case No. 23-cv-2431). *See* Dkt. No. 41. Thus, there is no shared discovery or streamlining that would result in this dispute being adjudicated more efficiently in this district as opposed to in New York. Finally, although Albany Med agreed to litigate disputes relating to its use of Google Analytics in California under California law, the burden of litigating disputes with a single California-based entity is considerably different from that of being subjected to a class action in California by a patient base that is almost entirely situated in New York. It is not clear that Albany Med could have reasonably anticipated that outcome from its agreement to Google's default terms of service. So even if purposeful direction or purposeful availment were satisfied here, the exercise of jurisdiction would not be reasonable.

**IT IS SO ORDERED.**

Dated: June 9, 2026

VINCE CHHABRIA
United States District Judge

5